(Decided 11th March, 1885.)

------

HENRY H. KEEDY, Executor of JACOB E. SMITH *vs.* EZRA NALLY.

*Application to Reform  an  Agreement  on  the  ground of Mistake—Character of  Proof  required—Lapse of  Time.*

Where a person seeks to reform an instrument upon the ground of mistake, he must not only show clearly and beyond doubt that there has been a mistake, but he must also be able to show with equal clearness and certainty the exact and precise form and import that the instrument ought to be made to assume, in order that

it may express and effectuate what was really intended by the parties. And the alleged intention of the parties to which it is sought to make the instrument conform, must be shown to have continued in their minds concurrently down to the time of the execution of the instrument.

The application for relief on the ground of mistake should be made with due diligence, and time runs from the discovery of the mistake.

An agreement in writing between S. and N. was made in the year 1862. S. died in the year 1883, and one of the witnesses to the agreement also died. In the year 1884, N. filed a bill against the executor of S., to have the agreement reformed on the ground of mistake. It was not pretended that N. was ignorant of what was written in the agreement, or that he could not have been informed of it by the use of due diligence. The agreement was at all times accessible to him, and he procured its production for the examination of his counsel in respect to a litigation between himself and the son of S. sometime before the death of either S. or the deceased subscribing witness. HELD:

That the complainants' application was barred by the great lapse of time from the date of the agreement to the time of filing the bill.

APPEAL from the Circuit Court for Washington County, in Equity.

The bill of complaint in this case was filed by the appellee to have reformed a written agreement entered into by him and Jacob E. Smith, the appellant's testator, in April, 1862. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, IRVING, and BRYAN, J.

*Henry H. Keedy,* for the appellant.

*William Kealhofer,* and *Edward Stake,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

The principal object of the bill in this case is to procure the reformation of a contract set forth as having been

made between the plaintiff and Jacob E. Smith, since deceased, and of whose will the defendant is executor. The agreement is rather a remarkable one, and was made as far back as the 26th of April, 1862. Smith, one of the parties to the agreement, died in April, 1883, having made his will in July, 1882, and the bill in this case was filed in January, 1884.

The relation subsisting between the parties to the agreement was that of father-in-law and son-in-law; and the agreement would appear to have been made to compose differences and contentions between the parties which had arisen while living together as members of one household, and which differences had been carried to the extreme of threatened or attempted personal violence to each other. The bill sets forth the agreement by which this angry strife was composed, to only some portion of which agreement it will be necessary to make special reference in the course of this opinion.

It appears that Potter, a magistrate, was called in to act as draftsman of the agreement. The agreement, after setting forth certain terms upon which the plaintiff was to leave the farm of his father-in-law Smith, and the latter was to take care of and protect the plaintiff's wife, and his personal property left on the premises, contains this clause :—"And the said Nally on his part doth hereby agree that he will leave the premises of the said Smith, to return and see his wife, or to do any work for the said Smith which he may desire ; and also promises that he will never appear in Court to prosecute the case of recognizance for the keeping of the peace against the said Nally; and the said Smith agrees that he will never cut her, the wife of said Nally, off any legacy which she may or shall inherit in the estate of him, the said Jacob E. Smith."

It is in regard to the clause just quoted of this inartificially drawn and queerly phrased agreement that the mistake is alleged to have occurred. It is very manifest

that it is impossible to gather from the terms employed any definite and certain meaning of the parties; and if any intelligible term is to be incorporated into the contract, as a substitute for the one in regard to which the alleged mistake occurred, that must depend entirely upon extrinsic evidence.

It is shown by the evidence that the parties to the agreement were reconciled, and lived apparently friendly, until the last four or five years of Smith's life, when he became offended, and remained so to the time of his death, because, as he supposed, Nally and his wife had maltreated or taken the advantage of his afflicted son John; and by his will he cut Mrs. Nally off with the nominal legacy of five dollars.

The plaintiff by his bill charges that the draftsman, Potter, through inadvertence and mistake, inserted the words that we find in the agreement, which, as alleged, are different, and express a different meaning and purpose from that which was intended and agreed upon by the parties, "and that the true design and intention of the parties has been frustrated by such mistake in this," that instead of the words actually inserted, apt words should have been inserted to express the true meaning of the parties, which was, "that the said Susan Nally should inherit or receive an equal part of the estate of the said Jacob E. Smith at his death," and which said purpose was expressed to the draftsman, and who was then and there requested by both of said parties to commit the same to writing. As will be observed, it is not alleged with whom Mrs. Nally was to receive an equal share of the estate; but with the view we have of this case this omission is unimportant.

The defendant, by his answer, admits the death of Smith the testator, and the making and admission of his will to probate, but says that he cannot admit any of the other matters and things set forth in the bill of complaint, but de-

nies all the material allegations therein set forth. He
avers, however, that the agreement was written as the
parties thereto directed it to be written, and that the same
was read over to them before they signed it, and they gave
it their full approval; and that there was in fact no cor-
rection or reformation to be made. He denies that the
agreement can be so changed as to affect or control the
disposition made by the testator of his property by his
will; and he relies upon the laches of the plaintiff, and
the great lapse of time since the making of the agreement
before the institution of this suit.

The Court below decreed a reformation of the agree-
ment, and, instead of the terms originally incorporated
therein, decreed that the following provision be substi-
tuted therefor, to wit: "And the said Jacob E. Smith
agrees that the said Susan Nally, wife of the said Ezra
Nally, shall receive at the death of him, the said Jacob
E. Smith, *an equal portion or share of his estate along
with the other children* of the said Jacob E. Smith."

The principal witness in the case upon whose testimony
this substituted provision was decreed to be incorporated
in the agreement, was Potter, the draftsman. He was
called upon, after the lapse of twenty-two years, to furn-
ish evidence, from his unaided memory, of the precise
agreement and understanding of the parties, which,
according to the contention of the plaintiff, he either failed
to apprehend, or to express, at the time the agreement
was written. He admits that he cannot now pretend to
give the precise words of the parties, because of the great
lapse of time since the transaction; but he does say that
the understanding was that Mrs. Nally should have an
equal share of Smith's estate with the other children.
He says, however, and repeats it, that he wrote nothing
more nor less than what they told him to write. "I wrote
what they told me to write, to the best of my knowledge;
I would not pretend to do anything else. I read it over

to both of them, who were present. It was satisfactory to both, and both signed it in my presence." This is the testimony of the draughtsman of the agreement. The subsequent loose talk of Smith, spoken of by Mrs. Martz in her testimony, can afford no foundation for the change in the agreement. And the testimony of Mrs. Nally, in whose favor the agreement is sought to be reformed, furnishes no fact more definite than is furnished by the other proof in the case; and whether she was competent or incompetent to testify it is unnecessary to decide.

It is urged, however, that the agreement itself furnishes intrinsic evidence of some mistake or misapprehension; that notwithstanding the draughtsman says he only wrote what he was told to write, and the parties approved of it, the terms used by him in penning the agreement express no intelligible meaning, and therefore it is fair to conclude that there was a mistake or a misapprehension as to this clause of the agreement. And while this may be conceded, still the question is, what was the exact agreement of the parties, and what did they intend to express, and supposed that they had expressed, when they executed the agreement? For it is a well settled principle, that where a person seeks to reform an instrument upon the ground of mistake, he must not only show clearly and beyond doubt that there has been a mistake, but he must also be able to show with equal clearness and certainty the exact and precise form and import that the instrument ought to be made to assume, in order that it may express and effectuate what was really intended by the parties. And the alleged intention of the parties to which it is sought to make the instrument conform, must be shown to have continued in their minds concurrently down to the time of the execution of the instrument. *Kerr on Fraud & Mistake,* 421, and the cases there cited.

Now, looking to the circumstances under which the agreement was executed, its peculiar provisions, and the

slight consideration moving to Smith, are we justified in concluding to a certainty that he, with the full understanding of the import of the act, did in fact intend and agree to divest himself of all testamentary power and discretion over his property, so far as his children were concerned? We think not. The agreement as reformed by the decree appealed from now provides, that Mrs. Nally was entitled at her father's death, to "an equal portion or share of his estate along with the other" of his children. No matter what changes might occur in his family; no matter what provocation or justifiable incentive might exist, or what actual necessity might arise, for making a discrimination among his children, the decedent is to be regarded as having entirely denuded himself of all power to provide for any of his other children, except upon terms of perfect equality with Mrs. Nally. The agreement as reformed virtually nullifies the will of the decedent, as to the rights of the children thereunder; and makes it necessary that his property, subject to the rights of the widow under the will, should be equally divided among his several children. To effect this result, the proof, not only of the fact of mistake in penning the agreement, but of the exact and precise agreement that was intended to have been expressed, should be so clear and definite as to leave no room for doubt. That measure of proof, we think, has not been furnished in this case. *Watkins vs. Stockett,* 6 *H. & J.,* 445; *Showman and Wife vs. Miller, et al.,* 6 *Md.,* 485.

But apart from the defective character of the proof upon which the agreement is sought to be reformed, there is another ground upon which the application must fail, and that is the great lapse of time from the date of the agreement to the time of filing the bill. Twenty-two years had elapsed before any question was suggested or raised as to any defect in the agreement, and there is no explanation or excuse offered, by allegation or proof, for

this great delay. In the meantime one of the parties to the agreement has died, and one of the witnesses to the agreement, Mr. Stine, who was made custodian of the paper, has also died. The knowledge or recollection of this witness may have been most important in determining the question as to what the agreement really was. By the delay, the defendant, and the children of Smith interested in maintaining the will, have been deprived not only of the benefit of such version of the agreement as Smith himself could have furnished, but of the testimony of one of the chosen witnesses to the transaction. The principle is that the application for relief on the ground of mistake should be made with due diligence, and time runs from the discovery of the mistake. *Beaumont vs. Bramley*, 1 *Tur. & Russ.*, 41, 45 ; *Bloomer vs. Spittle, L. R.*, 13 *Eq. Cas.*, 427 ; *Kerr on Fraud and Mistake*, 435, 436. Here it is not pretended that the plaintiff was ignorant of what was written in the agreement, or that he could not have been informed of it by the use of due diligence. The agreement was at all times accessible to him, and he procured it to be produced for the examination of his counsel in respect to a litigation pending between himself and John Smith, son of the testator, sometime before the death of either Smith the party, or Stine the witness.

The decree of the Court below must be reversed, and the bill be dismissed with costs to the defendant.

*Decree reversed, and*
*bill dismissed.*

(Decided 11th March, 1885.)