MARLOW, Infant et al. *v.* DAVIS

[No. 82, September Term, 1961.]

*Decided December 12, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, PRESCOTT, HORNEY and MARBURY, JJ.

*Earl H. Davis,* for appellants.

*John M. McInerney,* with whom were *McInerney & Lat-
ham* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

When the Circuit Court for Montgomery County over-
ruled a motion for a new trial and entered a judgment for
costs on the verdict of the jury in favor of Catherine C.
Fillingame Davis (defendant below and appellee here) against
Jean Marlow, in her own right and as mother and next friend
of Bruce Marlow, an infant (plaintiffs below and appellants
here), the plaintiffs appealed, claiming the court erred in five
of its rulings with respect to a procedural matter and as to
the admissibility or inadmissibility of certain evidence.

On a Saturday afternoon in the latter part of November of
1955, the six year old infant plaintiff was struck while cross-
ing Greentree Road in Bethesda between intersections by an
automobile the defendant was operating. As a result the child
was seriously injured. Prior to the accident he had been play-
ing alone near a path leading to the school he attended on
the south (but not exactly opposite) side of the street from
his home. The impact occurred in the center of the street, but
there is a conflict in the evidence as to the manner he entered
the street. According to the child, he approached the side of
the street, looked in both directions and, seeing no traffic
either to the east or to the west started to walk across it and
had taken about four or five steps to the center of the macadam
paving when he heard the warning of a horn, saw the ap-

proaching automobile and stood still. But, according to the defendant and two witnesses called by the plaintiffs, the child darted out into the street in front of the automobile, which was traveling in an easterly direction. The defendant, who had first seen the child off of the street from the distance of about seventy-five feet, immediately reduced her speed from twenty-five to fifteen m.p.h. and blew her horn twice, and when next she saw him he had entered the street. At this point she applied both the foot and hand brakes. The skid marks resulting from the braking began on the operator's side of the street and were from fifteen to eighteen feet in length. When the vehicle came to a stop, the left front wheel was to the south of the center of the street.

On this appeal, the plaintiffs-appellants contend that it was error for the trial court (i) to prohibit mention of the *ad damnum* in the opening "argument"; (ii) to refuse to receive into evidence any testimony as to the existence of a school zone sign in the vicinity of the accident; (iii) to refuse to receive into evidence photographic enlargements of the scene of the accident; (iv) to allow a police officer over objection to give his opinion as to speed based on skid marks; and (v) to limit and restrict the cross-examination of the defendant and to require the plaintiffs to make the defendant their witness in order to examine her fully as to the terse testimony she had given on direct examination. All are without substance.

(i)

At the outset of the trial and before the jury was empanelled, counsel for the defendant made a motion to the effect that the plaintiffs should not be permitted to state "any figure as an evaluation of pain and suffering of the child" in "the argument." And while counsel for the plaintiffs objected that the motion was premature, he stated he would "only argue the evidence." Apparently the trial judge thought that both counsel were referring to the opening statements to be made to the jury, for she stated that the purpose of an opening statement is "simply to say what you will prove" and that the purpose of the "closing" arguments is "simply to say what you

believe you have proved." The record does not disclose that the trial court ruled on the motion and for that reason there is nothing before us on this *ad damnum* question to decide. Maryland Rule 885.

(ii)

The contention that the trial court refused to receive *any* testimony as to the existence of a school zone sign in the vicinity of the accident—which though facing the eastbound traffic was located further to the east (*not* to the west) of the point of impact—is not correct. The record shows that the court permitted the mother of the child to identify on a photograph the diamond-shaped sign in question and refused to strike out the identification on motion of the defendant. But, when the plaintiffs attempted to have other witnesses testify as to the sign, the court, upon successive objections of the defendant, refused to receive further testimony as to the existence of the sign for the reason that it was immaterial in that the school was not in session on the day of the accident. We think the offered evidence had little if any probative force, but even if we assume, without deciding, that it was improper to exclude it, the error was certainly not prejudicial inasmuch as evidence of the existence of the sign had already been offered and received. Cf. *State, Use of Hall v. Trimble,* 104 Md. 317, 64 Atl. 1026 (1906).

(iii)

The refusal to receive the enlarged photographs of the scene of the accident into evidence was also neither improper nor prejudicial. In preparing for the trial, the plaintiffs had a photographer take several small pictures of the scene of the accident. Some of the original pictures depicted the child standing where he said he was when he was looking both ways for traffic and was struck by the automobile of the defendant. But, in the process of "blowing up" the enlargements, the originals were so altered as to exclude the child from the picture. And when this fact was brought out on cross-examination, the defendant objected to the admission of the enlargements, but not the originals, as evidence. The court, in sustaining the objection as to the "blow-ups," received the

smaller photographs into evidence. On appeal, the plaintiffs, although claiming error, cited no authority, and we know of none, to support their position. On the contrary, we have repeatedly held that "questions relating to the admissibility of photographs are left largely to the discretion of the trial court." *Nocar v. Greenberg,* 210 Md. 506, 510, 124 A. 2d 757 (1956). See also *Kirsch v. Ford,* 170 Md. 90, 183 Atl. 240 (1936). Furthermore, since the smaller originals—which would seem to be the better evidence on behalf of the plaintiffs—were received as evidence, the plaintiffs were clearly not prejudiced.

### (iv)

The claim that allowing the police officer to give an opinion as to speed based on skid marks usurped the province of the jury is likewise without merit. When he was called by the plaintiffs, the officer testified on direct examination as to the length of the skid marks and the zoned speed limit, but, because he did not recall what the defendant had said as to the speed she was traveling, he gave no testimony on that point. On cross-examination, however, when the officer was asked what, in his opinion, was the speed of the automobile before the skid marks were laid down, he characterized the rate of speed as "slow," and the plaintiffs objected on the ground that the answer was "opinion evidence," but when the trial court explained that the purpose of the question was to ascertain the speed of the automobile from the skid marks, nothing further was done about the matter. And, on redirect, the plaintiffs not only established the fact (not previously shown) that the officer was fully qualified to testify as an expert, but, by having the witness further testify in detail as to braking distances, reaction time and stopping distances, thereby educed the evidence as to speed they had initially objected to and which they now claim was inadmissible because it invaded the province of the jury.

In this and other jurisdictions, there are many cases in which opinion evidence of experts was received and acted on as a matter of course when it came in without objection. Furthermore, in several recent cases we have had occasion to hold that it was not prejudicial error to admit the testimony of an

expert witness over objection even though it had the effect of giving an opinion on an issue it was the function of the jury to decide. See, for example, *Shivers v. Carnaggio,* 223 Md. 585, 165 A. 2d 898 (1960), and the cases cited therein. See also *Williams v. Dawidowicz,* 209 Md. 77, 87, 120 A. 2d 399 (1956), where it was said that "[i]f the expert opinion is reasonably calculated to assist the jury, and not to confuse it, such testimony is admissible, in the sound discretion of the trial court." And see *Harper v. Higgs,* 225 Md. 24, 169 A. 2d 661 (1961), in which we restated the test as to admissibility of an expert opinion. In the instant case, even if it was improper for the officer on cross-examination to characterize the speed as "slow," the error was rendered unobjectionable by the redirect examination of the expert witness which went far beyond the customary examination on redirect; and in any event its admission as evidence was harmless, for certainly the characterization of the speed as *slow* was not calculated to usurp the province of the jury.

(v)

The twofold final contention is to the effect: first, that the plaintiffs were unduly limited and restricted in their cross-examination of the defendant; and, secondly, that they should not have been required to make the defendant their witness in order to properly cross examine her. The record shows that counsel for the defendant asked her only twelve questions on direct examination and that her reply to them was encompassed as a whole in a terse statement of her story as to why and how the accident happened. The record further shows that counsel for the plaintiffs asked the defendant ninety some questions on cross-examination, most of which were properly aimed at impeaching the witness by showing prior contradictory statements. But, it also appears that many of the questions concerned her age, present marital status, employment and other questions which had little, if any, bearing on the issues involved and, as a result, much of the cross-examination was not confined to the points as to which the defendant testified on direct examination. (See *Williams v. Graff,* 194 Md. 516). The trial court made several efforts to keep the cross-

examination within the scope of the direct examination, but there is nothing in the record to indicate that the plaintiffs were unduly limited or restricted in their cross-examination of the defendant. Moreover, when they called the defendant as an adverse witness under the statute (§ 9 of Article 35 of the Code of 1957), it appears that no other testimony of a substantial nature was either sought or given that had not already been elicited from the defendant on direct and cross-examination.

The first part of this contention may therefore be disposed of by pointing out that, in the absence of a showing of prejudice or of abuse, considerable discretion as to whether cross-examination should be permitted to extend beyond the scope of the direct examination is vested in the trial judge. *Wilhelm v. Hadley,* 218 Md. 152, 146 A. 2d 22 (1958), and cases cited therein. As to the second part of this contention, we think it is manifest from what has already been said that the plaintiffs were not in any way prejudiced when they acted on the suggestion of the court and called the adverse witness as their own. See *Eastern Contractors v. State, Use of Seifert,* 225 Md. 112, 126, 169 A. 2d 430 (1961).

Finding no prejudicial error in any of the rulings below, we will affirm the judgment appealed from.

*Judgment affirmed; appellants to pay the costs.*