MATTINGLY ET AL. *v.* HOUSTON ET AL.

[No. 273, September Term, 1963.]

*Decided May 11, 1964.*

The cause was argued before HENDERSON, HAMMOND, PRES-COTT, HORNEY and SYBERT, JJ.

*William M. Canby* and *Allan B. Blumberg,* with whom were *Miller, Miller & Canby* on the brief, for appellants.

*Howard J. Thomas,* with whom were *Bradshaw & Thomas, J. Douglas Bradshaw* and *Francis E. Yeatman* on the brief, for appellees.

SYBERT, J., delivered the opinion of the Court.

We are called upon in this appeal to determine whether the Circuit Court for Montgomery County erred in ordering reformation of a deed from the appellants to the appellees for certain lots in a subdivision.

The appellants, Joseph A. Mattingly and Marion Mattingly, his wife, engaged a firm of civil engineers in 1952 to prepare a preliminary plan of resubdivision for a part of a development owned by them in Montgomery County. The plan was approved by the appropriate authorities and the engineers marked with iron pipes the boundaries of the resubdivision, known as Block 2-C, Hillmead-Bradley Hills. The engineers' certificate on the recorded plat stated that pipes were placed in the resubdivision as shown thereon. The appellants proceeded to sell various lots, retaining at least one for their own home.

Early in 1959 the appellee, Charles W. Houston, approached the appellant, Joseph Mattingly, with regard to purchasing land in the resubdivision. The two visited the development together

and Mattingly showed Houston two contiguous lots, numbered 15 and 18, which at that time were heavily wooded. According to a plat of the resubdivision, which Mattingly had brought along, both lots fronted on the south side of Ridge Road, and the west side of lot 18 abutted Fallen Oak Road. Neither street had been graded or improved. After studying the plat and the land, Houston told the developer that he did not believe he would be able to fit his contemplated house on lots 15 and 18, due to the slope of the ground and the type of house he desired to build. Mattingly thereupon agreed to sell an additional 30 foot strip along the entire south boundary, or rear, of lots 15 and 18. Houston testified that Mattingly pointed out the boundaries of the two lots and of the additional 30 foot strip, and in so doing, showed him two iron pipes intended to locate the northeast and southeast corners of the 30 foot strip. One of the pipes marked the southeast rear corner of lot 15 and the other was some 30 feet to the south of the first and marked a common rear corner of two lots—13 and 12—which faced to the east. The result was that approximately one-half of the rear boundary of lot 13 would become the easterly boundary of the 30 foot strip.

The parties entered into a contract for the sale of lots 15 and 18 and the 30 foot strip and a deed from the appellants to the appellees was executed on February 20, 1959. The deed described lots 15 and 18 only by reference to their lot numbers and the block number as shown on the recorded plats of the resubdivision; there was no metes and bounds description. The additional lot was described as follows: "All that parcel or strip of land 30 feet wide adjacent to and South of the South boundary line of aforesaid Lots 15 and 18, said parcel being bounded on the North by said Lots 15 and 18, on the East by Lot 13 in said Block and Subdivision as shown on said Plat Book 45, plat 3385, on the West by Fallen Oak Drive, and on the South by a line parallel to the said South boundary line of said Lots 15 and 18, and 30 feet South thereof." There was no reference to any pipes in the deed. Thereafter, the three lots were cleared and a road (Ridge Road) was constructed in front of their north or front boundary. The appellees then built a house on the lots, using the two pipes heretofore mentioned as points of reference in determining the boundaries of their land.

In the summer of 1959 Joseph Mattingly called the firm of civil engineers which had platted and located the resubdivision and complained that while attempting to lay out a tennis court on his lot (which adjoined the Houstons' 30 foot strip), he had discovered that the pipes marking the boundaries of the resubdivision were not properly placed. In the spring of 1960 the civil engineers again surveyed the resubdivision and found that there was approximately a 10 foot discrepancy between the plats as recorded and the pipes as set. Throughout the resubdivision, the pipes had been placed approximately 10 feet south of the points where they should have been located according to the plats. Thus, the rear line of the appellees' land, as based on the pipes and as occupied, was about 10 feet further south than it should have been if located in accordance with the plats. As a result the house that the appellees had constructed would be, by reference to the plats, in violation of the set-back requirements of the county zoning law as being too close to the rear lot line.

After an attempt by the appellants to induce the appellees to buy the strip of land approximately 10 feet wide between the true and the erroneous south boundaries, the appellees sued in equity for reformation of their deed so that it would include the strip in question, which was described in the bill of complaint in accordance with a survey thereof. After a hearing the Chancellor found mutual mistake on the part of the parties, and that it had been their true intent to establish the rear property line of the appellees in accordance with the pipes located on the land at the time of the sale. Accordingly, the Chancellor granted reformation and ordered that the 30 foot strip adjacent to the south boundaries of lots 15 and 18 be extended in a southerly direction so as to include the additional strip of land approximately 10 feet wide. From that order, the appellants entered this appeal.

The appellants' main contention is that, in granting reformation, the lower court acted "contrary to the evidence and the Maryland law". We do not agree. In the often cited case of *Hoffman v. Chapman*, 182 Md. 208, 34 A. 2d 438 (1943), this Court affirmed a decree granting reformation of a deed, when, through a mutual mistake of the parties as to the de-

scription of the property due to the fault of a third party (the draftsman), the deed erroneously conveyed an entire numbered lot, whereas only a portion thereof was intended to be conveyed. The Court said (at p. 210 of 182 Md.) : "It is a settled principle that a court of equity will reform a written instrument to make it conform to the real intention of the parties, when the evidence is so clear, strong and convincing as to leave no reasonable doubt that a mutual mistake was made in the instrument contrary to their agreement." See also *Hubble v. Somerville,* 187 Md. 418, 50 A. 2d 565 (1947) ; *Martz v. Jones,* 189 Md. 416, 56 A. 2d 30 (1947) ; 4 Pomeroy, *Equity Jurisprudence,* § 1376. The principles governing the power of equity courts to grant reformation of written instruments were recently restated by this Court in *Painter v. Delea, Att'y,* 229 Md. 558, 563-564, 184 A. 2d 913 (1962), as follows:

> "It is an established principle that a court of equity has the power to afford the remedy of reformation in order to make the instrument conform to the intent of the parties. * * * Equity will only act to reform the instrument if there is a mutual mistake of fact. It will not act on a mistake of law or of fact if the mistake is unilateral, save on the ground of fraud, duress or other inequitable conduct. * * *
>
> "Before granting the high remedy of reformation, the proof must not only establish that the written agreement was not the agreement intended by the parties, but also what was the agreement contemplated by them at the time it was executed. In many cases, the evidence, for the main part, is oral testimony. * * *"

In the case before us, we think the Chancellor's finding that through a mutual mistake caused by the error of third parties —the engineers—in placing the pipes, the deed did not convey what the purchasers intended to buy and what the vendors intended to sell, was supported by clear, strong and convincing evidence. The same applies to the Chancellor's finding that it had been the intention of the parties to locate the rear property

line of the appellees by reference to the pipes found on the land at the time of sale.

The appellants attempt to argue that the mistake was unilateral on the part of the appellees, and that they did not intend to convey any land other than that shown on the recorded plats, to which the deed referred. However, the Chancellor was entitled to believe, as she did, that when the appellant, Joseph A. Mattingly, pointed out lots 15 and 18 and the 30 foot strip as running from Ridge Road in front to the pipe in the rear, he intended to convey the land between the road and the line based on the pipe. While Mattingly denied, at the trial, that he had pointed out the pipe as a point of reference for the southern boundary, he had stated in a prior letter to the appellees that he could not "remember" pointing out any pipes as claimed by the appellees, but he did not "doubt for an instant that your [the appellees'] account of the circumstances is true." In addition, Mattingly admitted on the stand that he had pointed out some of the pipes to a great number of persons and he conceded that until the mistake was discovered in the summer of 1959 he had accepted the pipes as properly marking the resubdivision and had sold other lots in reliance on them. Considering these circumstances, we believe the Chancellor was justified in finding that by a mutual, not a unilateral, mistake, the descriptions in the deed did not encompass the whole area intended to be conveyed to the appellees.

The appellants also maintain that while the appellees may have had an intention to purchase with reference to the pipes at the time they went onto the land, the crucial time for determining the intent of the parties was when the deed was executed, citing *Moyer v. Title Guarantee Co.,* 227 Md. 499, 177 A. 2d 714 (1962). The appellants further cite *Keedy v. Nally,* 63 Md. 311 (1885), for the proposition that the intention of the parties to which it is sought to make the instrument conform, must be shown to have continued in the minds of the parties until the time of the execution of the instrument. The ready answer to this line of argument is that the evidence in the present case clearly established the intention of both parties that the property sold should extend from the road in front to the pipe in the rear, and that this intention continued until the

execution of the deed. Actually, it is plain from the record that both parties treated the pipe as locating the appellees' rear boundary line well after the execution of the deed. This is borne out by the fact that Mattingly did not warn Houston when the latter began building his house too close (according to the plat) to Mattingly's adjoining lot. And Mattingly conceded that he was completely ignorant of the discrepancy between the plat and the pipes until some months after the conveyance to the appellees.

Finally, insofar as the actual reformation is concerned, the appellants contend that the lower court erred because it gave the appellees more land than they intended to purchase. Their claim is that if the south or rear boundary is controlled by the pipe, thus placing it approximately 10 feet more to the south than as shown on the recorded plat, then the north or front boundary should not be on the road, but instead should be about 10 feet back therefrom, even though the recorded plats, as well as the plat displayed by Mattingly to Houston at the time of the sale, showed the lots as adjacent to the road. We think this argument is frivolous. It was obviously the intent of the parties, not that there should be a gap between the lots and the street, but that the appellees' lots should front on the road. The description in the reformed deed should so provide.

Lastly, the appellants contend that the lower court erred in not admitting into evidence a photograph of the front portion of the land in question taken six years before the appellees purchased their lots. The admissibility of photographs is largely, of course, in the discretion of the trial court. *Bagley v. State,* 232 Md. 86, 192 A. 2d 53 (1963). It may be that the photograph was properly excluded because it did not show the area where the pipes were located, but even if it were admissible, the appellants have not shown prejudice or injury, and thus its exclusion does not constitute a ground for reversal. *Marlow, Infant v. Davis,* 227 Md. 204, 208, 176 A. 2d 215 (1961).

*Order affirmed; appellants to pay the costs.*