HOUSING EQUITY CORPORATION *v.* JOYCE ET AL.

[No. 353, September Term, 1971.]

JOYCE ET AL. *v.* TOMES ET AL.

[No. 10 (Adv.), September Term, 1972.]

*Decided May 17, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, ▌ SINGLEY and SMITH, JJ.

*Robert A. Klein,* with whom were *Danzansky, Dickey, Tydings, Quint & Gordon* on the brief, for Housing Equity Corporation, appellant in No. 353 and appellee in No. 10.

*Paul Martin Wolff,* with whom were *Paul R. Connolly* and *Williams, Connolly & Califano* on the brief, for William T. Joyce and Stephen N. Jones, appellees in No. 353 and appellants in No. 10.

*Robert E. Bullard,* with whom were *Murray L. Deutchman* and *Bullard & Deutchman* on the brief, for Alma M. Burns, appellee in No. 353 and appellant in No. 10.

No brief filed for James F. Tomes and H. Hughes Spragins, appellees in both cases.

SINGLEY, J., delivered the opinion of the Court.

These two appeals, consolidated for purposes of argument, had their genesis in a single real estate transaction: the purchase by Housing Equity Corporation (Housing Equity) from William T. Joyce, Stephen N. Jones and Alma M. Burns (the Sellers) of some 101 acres of land in Montgomery County for $2,859,659.66, of which $625,000.00 was paid in cash and $2,234,659.66 was represented by notes, secured by two purchase money deeds of trust.

When Housing Equity defaulted in the payment of a purchase money note for $220,000.00 which evidenced part of the unpaid balance of purchase money, the Sellers made demand on James F. Tomes and H. Hughes Spragins for the release of $45,000.00 which had been placed in escrow with them by Housing Equity at time of closing to guarantee the construction of a road and payment of the purchase money notes. Tomes and Spragins refused to release the fund, and the Sellers brought an equity suit in the Circuit Court for Montgomery County against Tomes, Spragins and Housing Equity, in which they sought to enforce payment of the fund held by Tomes and Spragins in trust.

Tomes and Spragins answered, offering to pay the escrowed fund into the registry of the court, which was ultimately accomplished under order of court.

Housing Equity's answer asserted that the deed of trust which the Sellers claimed to be in default did not conform to the intention of the parties. In a counterclaim, it demanded that the agreement for the sale of the property, as modified by an addendum, the deeds of trust and the notes issued under the deeds of trust be reformed to reflect the alleged intention, and cross-claimed, alleging that Tomes and Spragins, the trustees under the deeds of trust, had refused to institute foreclosure proceedings, and prayed that they be directed to do so.[1]

Joyce, Jones, and Mrs. Burns moved for summary judgment as regards the escrowed fund. Joyce and Jones answered Housing Equity's counterclaim and prayed that it be dismissed; Mrs. Burns demurred, and Tomes and Spragins in their answer to Housing Equity's cross-claim sought the court's instruction and direction. In an order entered on 23 November 1971 the court granted the Sellers' motion for summary judgment. On petition by Housing Equity, this order was amended by an order entered 14 January 1972 which dismissed both the counterclaim against Joyce and Jones and the cross-claim against

---

1. The record contains a suggestion that the Sellers have also brought suit at law on the notes.

Tomes and Spragins, and sustained Mrs. Burns' demurrer without leave to amend, all *nunc pro tunc* as of 23 November 1971.

The purported thrust of Housing Equity's appeal in No. 353 challenges the summary judgment entered in respect of the escrowed fund, as well as the order, as expanded, which dismissed its counterclaim and cross-claim, and sustained Mrs. Burns' demurrer without leave to amend. The Sellers' appeal in No. 10 is from a second order entered 14 January 1972, allowing Tomes and Spragins a fee of $500.00 for their services as escrow agents, to be paid from the escrowed fund then held in the court's registry. An effective disposition of the issues involved in the cases requires the sorting out of a tangled skein of facts.

When negotiations began in the summer of 1967, the Sellers were the owners of a tract of about 125 acres, which had been assembled during the preceding 10 years. Housing Equity, lacking the resources to purchase and develop a tract of substantial size, proposed to purchase some 15 acres immediately and to acquire options to purchase the remainder of the tract in parcels over a period of years. The Sellers, for understandable tax reasons, were unwilling to commit themselves to a series of sales, and would only agree to make a single sale of 101 acres.[2]

The negotiations were integrated into an agreement of 11 January 1968, which although examined by the chancellor is not a part of the record before us. It seems to be conceded by all parties that this contemplated the sale of 101 acres for $2,859,659.66, which is consistent with the memorandum of the settlement held on 25 March 1969. Sometime between the January, 1968 agreement of sale and the March, 1969 closing, Housing Equity was successful in negotiating a sale to Ford Motor Company, for $1,050,000.00, of some 15 acres of the tract

_____

2. The Sellers wanted to be sure that they would not be treated for tax purposes as dealers, *Internal Revenue Code*, 26 U.S.C. § 1231(b)(1)(B).

which it had under contract. Settlement for this sale appears to have been had simultaneously with the closing for the purchase of the entire tract, and the proceeds of the sale to Ford made possible the payment of that portion of the sale price which the Sellers received in cash.

Here again, the deeds of trust are not before us, but it seems clear that they contained partial release provisions intended to release from the lien of the deeds portions of the tract as the purchase money debt was partially satisfied. It would appear that the cash payment made at the closing was consideration for the Sellers' release of the Ford tract, as well as of a small amount of additional acreage.

At the March, 1969 settlement an addendum to the January, 1968 contract was entered into. The addendum provided, in the only part which we have before us:

"12. Purchaser [Housing Equity] covenants and agrees with Sellers that at date of settlement to give Sellers a performance and completion bond in the amount of $45,000.00, from a reputable bonding company, guaranteeing that the lead road shown on the attached plat will be constructed by Purchaser between the points designated on said plat as A through F, or if Purchaser cannot obtain a performance and completion bond as aforesaid, then and in that event Purchaser shall at time of settlement set forth in Paragraph 2 of this addendum place in escrow with the settlement attorney the sum of $45,000.00, which sum shall be turned over by the settlement attorney to the Sellers as final and liquidated damages for Purchaser's default, upon the happening of either of the following events whichever first occurs, namely:

(1) Default in payment of the first installment of Purchase Money Note(s) in Paragraph 6 (a) of this addendum constituting a default of the Purchase

Money Trusts in Paragraph 7 (a) and (b) of this addendum.

(2) Failure by Purchaser to complete said road within twenty (20) months from date of settlement. If said road is completed as aforesaid, said $45,000.00 shall be turned over to Purchaser."

The sum of $45,000.00 was, in fact, reserved at closing, and held in escrow by Tomes and Spragins. In response to a demand for admission of facts, Housing Equity on 19 January 1971, conceded that the road had not been constructed. This admission obviates the necessity of any extended consideration of whether there had or had not been a default in the payment of the notes.[3]

Before considering the three narrow issues presented by the appeals, there should be some discussion of the procedural posture in which No. 353 reaches us. There, the lower court filed an opinion and entered an order on 23 November 1971. While a reading of the opinion indicates that the prayer of Joyce and Jones for the dismissal of the counterclaim would be granted; that Mrs. Burns' demurrer to the counterclaim would be sustained; and that the cross-claim would be dismissed, the formal order appended to the opinion granted only the Sellers' motion for summary judgment. On 17 December 1971, Housing Equity appealed from the order of 23 November 1971.

On 10 January 1972, Housing Equity filed a petition to revise the November order *nunc pro tunc,* alleging that the order failed to state whether Mrs. Burns' demurrer was sustained with or without leave to amend, and that while the opinion impliedly disposed of the demurrer, it failed to deal with Housing Equity's counterclaim against Joyce and Jones and its cross-claim against Tomes and Spragins, which remained before the chancellor on bill and answer.

As we have indicated, on 14 January, the court entered

---

3. The admission also conceded that whatever interest Housing Equity had in the property had been sold on 4 September 1970 at an execution sale at the instance of a judgment creditor.

an order in substantially the form consented to by Housing Equity's counsel, sustaining Mrs. Burns' demurrer without leave to amend and dismissing Housing Equity's counterclaim and cross-claim, "all *nunc pro tunc* as of 23 November 1971." No appeal was taken by Housing Equity from the 14 January order.

Ordinarily, we would have no choice but to confine our consideration to the order of 23 November which was the only order from which an appeal was taken. While there may be instances where a court may exercise revisory powers over an order or decree, on a motion made in timely fashion before the order or decree is enrolled, Maryland Rules 671 and 625; *Accrocco v. Splawn,* 264 Md. 527, 287 A. 2d 275 (1972), or even after a decree has been enrolled, to correct an error apparent on the face of the decree, Rule 681; *Jackson v. Jackson,* 260 Md. 138, 271 A. 2d 690 (1970), in most instances the trial court loses jurisdiction over a case once an appeal has been entered.

If a motion for the revision of a decree or judgment is made after an appeal has been taken, the moving party is put to an election between his motion and his appeal. If the appeal is dismissed before the hearing on the motion, the motion stands for hearing as though no appeal had been entered. If the appeal is not dismissed, the court lacks the power to act on the motion, *McGinnis v. Rogers,* 262 Md. 710, 735-736, 279 A. 2d 459 (1971); *Visnich v. Wash. Sub. San. Comm.,* 226 Md. 589, 590-591, 174 A. 2d 718 (1961); *Tiller v. Elfenbein,* 205 Md. 14, 19, 106 A. 2d 42 (1954).

There can be no doubt that the entry of the summary judgment, awarding the Sellers the escrowed fund, was correct. The Sellers alleged that the road had not been built; Housing Equity admitted that it had not. There was no dispute as to a material fact, Rule 610 d 1, *Rooney v. Statewide Plumbing and Heating—General Contractors, Inc.,* 265 Md. 559, 290 A. 2d 496 (1972); *Sherman v. Am. Bankers Life Assur.,* 264 Md. 239, 241-242, 285 A. 2d 652 (1972); *Brown v. Suburban Cadillac, Inc.,* 260 Md. 251, 254, 272 A. 2d 42 (1971); *Lipscomb v. Hess,* 255

Md. 109, 257 A. 2d 178 (1969), and judgment was properly entered accordingly.

Had the focus of the briefs which were filed and the arguments which were made been limited to the order entered on 23 November, we would have confined our consideration of the case to the affirmance of the summary judgment and perhaps would have remanded the case for the entry of an order disposing of Mrs. Burns' demurrer, as well as the counterclaim and the cross-claim, which were before the court on bill and answer. However, since these questions are before us and were fully briefed and argued, we shall consider the issues as presented in order to serve the ends of justice by avoiding the delay and expense which would follow a remand for the amplification of the earlier order and a new appeal.

We entertain no doubt that Mrs. Burns' demurrer to the counterclaim should have been sustained without leave to amend and that Housing Equity's counterclaim against Joyce and Jones and its cross-claim against Tomes and Spragins which were before the chancellor on bill and answer should have been dismissed.

The counterclaim sought a reformation of the contract of sale, of the addendum, of the deeds of trust, and of the notes issued under the deeds on the theory that they did "* * * not accurately reflect the actual Agreement reached among the parties." Housing Equity's theory is that all of these instruments were, as it characterizes them, "cosmetic" in form: that is, while cast in the form of an outright sale, with provision for the release of parcels from the lien of the deeds of trust as the purchase money debt was reduced, what was actually intended was a series of continuing options to purchase portions of the tract, with no liability being imposed on Housing Equity for failure to exercise the options. In support of this, it says that the notes bore no interest and that while Housing Equity remained liable on the notes, there was no individual liability so far as its principals were concerned.[4]

---

4. This does not appear to be quite correct, since the note for $220,000.00, which had the earliest maturity, bore interest at 6%.

Forgetting for the moment that the contract of sale, the addendum and the deeds of trust seem to have been before the chancellor when he considered the motion for summary judgment but are not a part of the record before us, apparently because they were filed as exhibits to depositions and not with the formal pleadings, and assuming, for the sake of argument, that all Housing Equity says is true, an ingredient essential to its success is lacking. Equity will reform a written document when and only when there is a mutual mistake of fact or a mistake is made by one of the parties accompanied by fraud, duress or other inequitable conduct practiced on the person making the mistake by another party, *Mattingly v. Houston,* 235 Md. 54, 200 A. 2d 160 (1964); *Painter v. Delea, Att'y,* 229 Md. 558, 184 A. 2d 913 (1962); *Moyer v. Title Guarantee Company,* 227 Md. 499, 177 A. 2d 714 (1962).

In the last case, Judge (later Chief Judge) Prescott, speaking for the Court, stated the rule:

"The request for the reformation of a written instrument is one for unusual relief, and when granted, it differs from rescission, cancellation or annulment of the document. Unlike these, the instrument remains in force and effect, but in a modified, or changed, form; hence, before granting the high remedy of reformation, the proof must not only establish that the written agreement was not the agreement intended by the parties, but also what was the agreement contemplated by them at the time it was executed. And in many cases, the evidence, for the main part, is oral testimony. *Hoffman v. Chapman,* 182 Md. 208, 34 A. 2d 438 [1943]. Before performing the difficult and delicate task of reforming an agreement after the parties have solemnized it by reducing it to writing and executing the same, this Court has consistently required proof of the highest order. In *Keedy v. Nally,* 63 Md. 311, 316 [1885], Judge Alvey, for

the Court, said that the plaintiff, 'must not only show clearly and beyond doubt that there has been a mistake, but he must also be able to show with equal clearness and certainty the *exact* and *precise* form and import that the instrument ought to be made to assume, in order that it may express and effectuate what was really intended by the parties.' (Emphasis added.) Again in *White v. Shaffer*, 130 Md. 351, 360, 99 A. 66 [1917], it was stated: ' "Not only must a mutual mistake be shown, but the precise agreement which the parties intended but failed to express must be proven beyond a reasonable doubt. *Second Nat'l Bank v. Wrightson*, 63 Md. 81 [1885]; *Bouldin [Boulden] v. Wood*, 96 Md. 336 [332] (53 A. 911) [1903]. And the evidence required for this purpose must be of the strongest character and the proof must be convincing." ' The Court, in *Brockmeyer v. Norris*, 177 Md. 466, 473, 10 A. 2d 326 [1940], quoted, with approval, this passage from Pomeroy: ' "Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a mere preponderance of evidence, but only upon a certainty of the error." ' See also *Hubble v. Somerville*, 187 Md. 418, 422, 50 A. 2d 565 [1947]; *Urquhart v. Alexander*, 218 Md. 405, 411, 147 A. 2d 213 [1958]." 227 Md. at 504

Housing Equity does not rest its case on mutual mistake or fraud but rather on an allegation that it was induced by what it characterizes as the inequitable conduct of the Sellers to enter into a contract under the impression that the contract meant something other than what it plainly said. This is entirely too tenuous an argument to meet the rigid requirements which are imposed if the high remedy of reformation is to be granted, since it falls far short of the mark that proof must meet the highest order of certainty.

It is also not enough to avoid the rigorous rule which governs the objective construction of contracts: "* * * that when the language of a contract is clear and unambiguous, the true test of what was meant is not what a party to the contract may have intended it to mean, but what a reasonable person in the position of the parties would have thought it meant," [citing cases], *U.S.I.F. Triangle v. Rockwood Dev. Co.*, 261 Md. 379, 383-384, 275 A. 2d 487 (1971). Furthermore, in a case like this, even apart from any consideration of the effect of the statute of frauds, a collateral agreement cannot be proved by parol unless it is independent, separate and distinct from the original agreement; consistent with the provisions of that contract and of a nature which would naturally be expected under the circumstances, *Chertkof v. Spector Balto. Terminal,* 263 Md. 550, 557-558, 284 A. 2d 215 (1971); *Rinaudo v. Bloom,* 209 Md. 1, 9-10, 120 A. 2d 184 (1956).

The contention advanced in the cross-claim is even more novel—that Tomes and Spragins, the trustees of the deeds of trust, should be directed to institute foreclosure proceedings. It is scarcely necessary to belabor the point that in the usual case this is an election available to the obligee of a security instrument but not to the obligor, *see generally* Rule W73.

Accordingly, we shall amplify the order of 23 November to the end that Mrs. Burns' demurrer will be sustained without leave to amend and Housing Equity's counterclaim and cross-claim will be dismissed.

The appeal in No. 10 is from an order entered 14 January 1972 that $50,463.05 ($44,500.00 plus accrued interest of $5,963.05) be paid to the Sellers and $500.00 be paid from the fund to Tomes and Spragins, the escrow agents, for services in connection with the litigation. Their petition alleged that they were required to answer the Sellers' bill of complaint, to appear in court "on several occasions," and to spend time being deposed.

The Sellers oppose the allowance on the ground that

it was not specifically provided for by the terms of the escrow; that Tomes and Spragins could have released the escrowed fund without being put to the inconvenience of litigation, had it not been for the intransigence of Housing Equity which forbade the payment; and finally, that the firm of which Tomes and Spragins were members had been paid a fee of $1,390.00 for services at the settlement.

We are of the opinion that with the entry of Housing Equity's appeal from the order of 23 November 1971 the court below lost jurisdiction over the case, *Tiller v. Elfenbein, supra,* 205 Md. 14, and lacked the power to make the allowance of compensation to Tomes and Spragins. In ordinary circumstances, we would regard the order as a nullity and dismiss the appeal. Here again, in order to avoid a remand and to obviate the possibility of another appeal, we propose to enter an order in the form in which it ought to have been entered, under the circumstances, Rule 875 a, 875 b.

It would appear from the record that Tomes and Spragins were about to release the fund when Housing Equity's counsel prohibited the payment. Therefore it was Housing Equity, and not a lack of diligence on the escrow agents' part as the Sellers claimed, which put Tomes and Spragins to the inconvenience for which they sought to be compensated. It should be borne in mind that this was an action instituted by the Sellers to require Tomes and Spragins, as trustees, to execute their trust. It was much like an interpleader proceeding where the costs and fees are generally ordered to be paid by the party who made the litigation necessary, *Hopkins v. Easton Nat. Bank,* 171 Md. 130, 136, 187 A. 874 (1936). What we said in *Urquhart v. Alexander & Alexander, Inc.,* 218 Md. 405, 418, 147 A. 2d 213 (1958) dealing with costs is apposite here:

> "We think that the costs should be paid out of a fund only in those proceedings in which the parties have a common interest or when the fund itself benefits from the action. When there

is an adversary proceeding, such as this, to determine who is entitled to the fund in dispute, the losing party should pay the costs in the trial court and on appeal."

In the circumstances of this appeal, where the trustees performed services beyond those contemplated by the agreement, the inclusion or absence of a provision for compensation in the escrow agreement is not necessarily determinative of the trustees' entitlement to a fee. Whether or not the trustees are entitled to such a fee, and the amount of that fee, would be within the sound discretion of the chancellor, *Schloss v. Rives,* 162 Md. 346, 352-354, 159 A. 745 (1932). Here, we conclude that the charge should have been paid by Housing Equity, and judgment for $500.00 and costs should be entered against Housing Equity in favor of Tomes and Spragins.

> *Order of 23 November 1971 in No. 353, September Term, 1971, granting motion for summary judgment affirmed and modified to sustain the demurrer of Alma M. Burns without leave to amend and to dismiss the counterclaim and cross-claim of H o u s i n g Equity Corporation, and as modified, affirmed, costs to be paid by appellant.*
>
> *In No. 10, September Term, 1972, judgment for $500.-00 and costs entered in favor of James F. Tomes and H. Hughes Spragins against H o u s i n g Equity Corporation, costs on appeal to be paid by appellee, Housing Equity Corporation.*