## HOUSING AUTHORITY OF COLLEGE PARK
### v. MACRO HOUSING, INC.

[No. 223, September Term, 1974.]

*Decided June 25, 1975.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Bernard A. Raum* and *Melvin L. Schneider* for appellant.

*Samuel Gordon,* with whom was *Robert H. Haslinger* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court:

Unfortunately in this case we are compelled to capitulate to the correctness of the hypertechnical pleading contention which the Housing Authority of College Park,[1] the appellant,

---

1. The Housing Authority of College Park is a "public body corporate and politic" created by the General Assembly through its enactment of what is now codified as Maryland Code (1957, 1971 Repl. Vol., 1974 Cum. Supp.) Art. 44A, §§ 1-33. As required by that statute the governing body of the City of College Park, through proper resolution, officially breathed life into this otherwise dormant agency. Section 4 of Art. 44A in part reads:

"In each city . . . of the State [having a population of more than 1000] there is hereby created a public body corporate and politic to be known as the 'housing authority' of the city; provided, however, that such authority shall not transact any business or exercise its powers hereunder until or unless the governing body of the city by

first asserted in the trial court and now pursues on appeal to this Court. Having reached this conclusion, it follows that we must vacate the $25,000 judgment which was entered in the Circuit Court for Prince George's County in favor of Macro Housing, Inc., the appellee; however, in the interest of advancing the "purposes of justice," we think a remand of the case to the trial court for further proceedings (Maryland Rule 871 a) is appropriate in order to provide the appellee an opportunity to institute corrective pleading action. We vacate this judgment with considerable reluctance because, as may be gleaned from even a cursory reading of the largely uncontradicted testimony contained in the transcript together with the exhibits introduced at the trial, there appears to be a high likelihood, once the pleading malady is cured, that the appellee will be successful in re-establishing its entitlement to a judgment in the same amount.

The declaration filed by the appellee-plaintiff in this law action sounds in assumpsit and is in one count. It sets up a contract in writing, dated 2 September 1970 (with a copy being attached to the narr), by which Macro agreed to first construct, according to attached specifications, 109 dwelling units upon the property located at 9014 Rhode Island Avenue, College Park, Maryland, and then sell, with the appellant-defendant agreeing to purchase, that 2.47 acre tract together with the newly constructed improvements for the sum of $1,908,880.[2] The declaration then avers that, prior to the execution of the contract, the parties had agreed to delete the provision of the specifications which required the seller to furnish "ranges and refrigerators" for the dwelling units so that providing these appliances would become the responsibility of the purchaser. Nevertheless, Macro continues, when by mistake this provision was not in

proper resolution, approved by the mayor, shall declare at any time hereafter that there is need for an authority to function in such city."

2. By this contract the Housing Authority of College Park, with funding provided by the United States Department of Housing and Urban Development, was attempting to acquire a "turnkey" (meaning fully completed) housing project for elderly citizens, to be known as Attick Towers.

fact removed from the contract instrument, the appellant-purchaser, relying on the agreement as erroneously written, refused to pay $25,000 of the purchase price, claiming a right to retain that amount because the contractor failed to provide these appliances. It is for this sum that Macro instituted this suit against the Housing Authority.

The appellant responded to these allegations of "mistake" first by demurrer, which was overruled, and then by objecting, during the course of the nonjury trial on the merits, to appellee's introduction of both oral and documentary evidence tending to sustain the "mistake" allegations. The appellant urges on appeal that the trial judge should have sustained the demurrer; but, if not, he should have, at the very least, refused to admit into evidence these proffers. It supports these claims of error by contending that since the 2 September contract, alleged to constitute the basis for this suit, by its specific terms, which no extrinsic evidence should properly be received to vary, plainly and unambiguously provides that the "ranges and refrigerators" were to be supplied by Macro, there can be no recovery by the appellee in this case.

We agree that as this action is now pleaded the appellee cannot succeed. This result follows because, after alleging as the basis of its damages claim that the appellant breached an unambiguous written contract, Macro then attempts to vary the terms of the document by showing that this agreement does not express the understanding of the parties; this is a tactic prohibited by the parol evidence rule.

> "It is an elementary [substantive] rule of the common law that parol evidence is inadmissible to vary or contradict the terms of a written instrument. The reason for that rule, as we said in *Markoff v. Kreiner*, 180 Md. 150, 23 A. 2d 19, is that when contracting parties have discussed and agreed upon their obligations to each other and reduced them to writing, their written contract is more reliable as evidence than memory. All prior and contemporaneous negotiations are merged in the

written instrument, which is treated as the exclusive medium for ascertaining the extent of the obligations. Hence, in the absence of duress, fraud, or mistake, parol evidence of conversations before or at the time of the execution of a contract must be excluded." *Freeman v. Stanbern Const. Co.*, 205 Md. 71, 77, 106 A. 2d 50 (1954); *see Canatella v. Davis*, 264 Md. 190, 200-04, 286 A. 2d 122 (1972); *Foreman v. Melrod*, 257 Md. 435, 441-44, 263 A. 2d 559 (1970); *Hoffman v. Chapman*, 182 Md. 208, 210, 34 A. 2d 438 (1943).

In order to overcome this problem, the appellee urges that, by novation or a new agreement, a subsequent compact, sufficiently documented to comply with the Statute of Frauds, was entered into by the parties which compromised their differences by varying the terms of the 2 September contract so as to delete the provision that the appellee would furnish the "ranges and refrigerators." However, even though we recognize that when differences such as exist in this case arise from a contract and there follows, by mutual agreement of the parties, an entry into a new understanding embodying a compromise (this being sufficient consideration to support the new agreement, *Freeman v. Stanbern, supra* at 78), the appellee's efforts to save its existing judgment is not aided. This is so because this suit was not brought for a breach of any such new contract; instead, as already noted, the 2 September contract is designated by Macro in its declaration as the basis for this action. As was stated more than a century ago by Chief Judge Bowie for our predecessors in *Hoke v. Wood*, 26 Md. 453 (1867):

> "The elementary rules of evidence require the contract set out to be substantially proved. This is essential to the establishment of the identity of the claim. . . .
>
> "The defendant is entitled to the benefit of this rule to protect himself by the verdict and judgment . . . .

* * *

"The plaintiffs having failed to prove the contract as set out in the *nar.*, . . . could not insist·upon their right to recover under the declaration for the breach of another and different contract. Our system of pleading, though simplified [and with permission to amend being freely permitted], does not dispense with the essential rudiments of evidence. It does not permit plaintiffs to aver one thing and prove another." *Id.* at 460-61. *See Norris v. Ald New York, Inc.*, 227 Md. 110, 175 A. 2d 749 (1961); *Weil v. Lambert*, 183 Md. 233, 241, 37 A. 2d 312 (1944); *Zalis v. Walter*, 180 Md. 120, 125, 23 A. 2d 26 (1941).

However, as there has been no merger of law and equity in this jurisdiction, while it is not appropriate for a circuit court, convened at law, to receive parol evidence concerning a contract and then to reform that agreement by deleting those provisions which the evidence shows would not be there if it were not for inadvertence and mistake, *Farrow v. Hayes*, 51 Md. 498, 505 (1879); *Rodeman v. Lawson*, 49 Md. 135, 157 (1878); *cf. Canatella v. Davis*, *supra* at 203-04, if the action were brought as one in equity the parol evidence rule will not present a hurdle to the party seeking to vary the terms of the contract by reforming it because "equity refuses to enforce this rule whenever it is alleged that fraud, accident or mistake occurred in the making of the instrument, and will admit parol evidence to reform the instrument, even though it is within the Statute of Frauds." *Hoffman v. Chapman*, *supra* at 210. And as further explained by Judge Delaplaine for the Court in *Hoffman:*

"It is a settled principle that a court of equity will reform a written instrument to make it conform to the real intention of the parties, when the evidence is so clear, strong and convincing as to leave no reasonable doubt that a mutual mistake was made in the instrument contrary to their agreement. (citations omitted) . . . . 'A court of equity would be of little value,' Justice Story said, 'if it could

suppress only positive frauds, and leave mutual mistakes, innocently made, to work intolerable mischiefs contrary to the intention of the parties. It would be to allow an act, originating in innocence, to operate ultimately as a fraud by enabling the party, who receives the benefit of the mistake, to resist the claims of justice under the shelter of a rule framed to promote it. . . . We must, therefore, treat the cases in which equity affords relief, and allows parol evidence to vary and reform written contracts and instruments, upon the ground of accident and mistake, as properly forming, like cases of fraud, exceptions to the general rule which includes parol evidence, and as standing upon the same policy as the rule itself.' 1 *Story, Equity Jurisprudence,* 12th Ed., Secs. 155, 156.

\* \* \*

"Equity reforms an instrument not for the purpose of relieving against a hard or oppressive bargain, but simply to enforce the actual agreement of the parties to prevent an injustice which would ensue if this were not done. Chief Justice Alvey warned: 'The court will never, by assuming to rectify an instrument, add to it a term or provision which had not been agreed upon, though it may afterwards appear very expedient or proper that it should have been incorporated.' *Stiles v. Willis,* 66 Md. 552, 556, 8 A. 353, 354."

\* \* \*

"The general rule is accepted in Maryland that a mistake of law in the making of an agreement is not a ground for reformation, and where a mistake, either of law or of fact, is unilateral, equity will not afford relief except by rescinding the agreement on the ground of fraud, duress or other inequitable conduct. . . . [Nevertheless, where a contract] is intended to carry into execution a written or oral

agreement, but fails to express the manifest intention of the parties on account of a mistake of the draftsman, whether from carelessness, forgetfulness or lack of skill, equity will rectify the mistake to make the . . . [contract] express the real intention of the parties. (citations omitted)." 182 Md. at 210-14. See *Flester v. Ohio Cas. Ins. Co.*, 269 Md. 544, 555-56, 307 A. 2d 663 (1973); *Housing Equity Corp. v. Joyce*, 265 Md. 570, 580-81, 290 A. 2d 769 (1972); *Mattingly v. Houston*, 235 Md. 54, 200 A. 2d 160 (1964); *Painter v. Delea, Att'y*, 229 Md. 558, 184 A. 2d 913 (1962); *Moyer v. Title Guarantee Company*, 227 Md. 499, 177 A. 2d 714 (1962).

The uncontradicted evidence produced at the trial discloses that at a meeting in the Philadelphia, Pennsylvania, offices of the United States Department of Housing and Urban Development (HUD) on 2 September 1970, prior to the execution of the written contract at that place on that date, John P. Minogue, President of Macro, with full authority to act for and contractually bind that corporation relative to the proposed College Park housing project, and William F. Kirchner, Executive Director of the Housing Authority, likewise empowered to bind that municipal agency, agreed to delete the provision, contained in the specifications attached to the written contract, that the "ranges and refrigerators" would be furnished by the developer as had been tentatively decided in previous negotiation conferences. Instead, they decided in effect to substitute in that provision's place a requirement that the Housing Authority would bear this responsibility from funds already approved in its budget for that purpose. Nevertheless, this uncontradicted testimony also shows that, because of the lateness of the hour and the rush to prepare and execute the agreement before the meeting ended, this deletion was, inadvertently and by mistake, not made. The fact that this mishap occurred, which if true gives credence to the adage "haste makes waste," [3] was

---

3. *John Heywood, Proverbs,* pt. 1, ch. 2 (1546).

substantiated not only by the trial testimony of Macro's president and the Housing Authority's executive director but also by a letter, introduced into evidence over the appellant's objection, written by Albert D. Levy, the Director of HUD's Production Division, who attended and hosted the 2 September meeting.[4] Because this uncontradicted testimony indicates that the appellee may well be entitled to relief through reformation in equity, we conclude that the "purposes of justice" dictate that the judgment, as entered in the circuit court, be vacated and the case remanded so that, in a proper proceeding conducted in a proper forum,[5] if the allegations of mistake are proved, the contract may be reformed so as to reflect the actual agreement of the parties; and then, since once equity obtains jurisdiction it retains it for all proper purposes, a money decree may be entered in that equity action for the unpaid balance of the purchase price ($25,000) plus interest. *Charles Co. Broadcasting v. Meares*, 270 Md. 321, 329, 311 A. 2d 27 (1973).

> *Judgment vacated and case remanded for further proceedings consistent with this opinion.*
> *Costs to abide the final result.*

---

**4.** It may well be that the admission of this letter into evidence over the appellant's objection constituted error, a question which we need not decide in view of our disposition of this case. However, if the case is retried, it might be well for the appellee to consider obtaining this testimony in some other manner in order to eliminate the possibility of a hearsay objection.

**5.** It is unnecessary that a new action be instituted in equity as Rule 515 provides for the transfer of an action from law to equity, and for that matter vice versa. Section c of that Rule outlines the procedure to be followed in connection with such a transfer.