492 A.2d 281

MARYLAND PORT ADMINISTRATION et al.

v.

JOHN W. BRAWNER CONTRACTING
COMPANY, INC., et al.

No. 138, Sept. Term, 1984.

Court of Appeals of Maryland.

May 13, 1985.

William A. Kahn, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Allan B. Blumberg and Edward S. Harris, Asst. Attys. Gen., Baltimore, on the brief), for appellant.

David M. Layton, Towson (Wallace Dann, Towson, on the brief), for appellee, John W. Brawner Contracting Co., Inc.

John H. Thornton, Salisbury (Cullen, Clark, Insley & Hanson, Salisbury, on the brief), for appellee, J. Roland Dashiell & Sons, Inc.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and McAULIFFE, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), Specially Assigned.

SMITH, Judge.

COMAR 21.05.02.12D states relative to State contracts:

> "Mistakes Discovered After Award. Mistakes [in bids] may not be corrected after award of the contract except when the procurement officer and the head of a procurement agency makes [sic] a determination that it would be unconscionable not to allow the mistake to be corrected. *Changes in price are not permitted.* Corrections shall be submitted to and approved by the State Law Department." (Emphasis added.)

We shall here hold that the regulation means what it says when it specifies, "Changes in price are not permitted." Hence, we shall reverse the judgments of the trial court.

We have here an appeal on behalf of State agencies in each of two cases which were consolidated for consideration in the Circuit Court for Baltimore City. That court af-

firmed decisions made by the State Board of Contract Appeals.

## I

Maryland Code (1957, 1981 Repl.Vol., 1984 Cum.Supp.) Art. 21, entitled "Procurement," was enacted by Ch. 775 of the Acts of 1980. Except for § 2–301(a), specifying that the Board of Public Works and certain departments were to "adopt regulations to carry out the provisions of th[at] article" by December 1, 1980, it became effective July 1, 1981.

Pursuant to the provisions of Joint Resolution No. 28 of the Acts of 1977, a Purchasing and Procurement Policies Task Force was appointed by the Speaker of the House of Delegates and the President of the Senate. Among other things, the resolution referred to the fact that the American Bar Association had "released for study a Model Procurement Code which [was then] being examined in detail by a Special Committee on State and Local Public Contract Law formed by the Maryland State Bar Association and which [was then] also being reviewed by other professional associations and government groups . . . ." A proposed act, basically in the form of the present Art. 21, was appended to the final report of the Task Force filed on March 19, 1979. The report indicates that its original proposal, embodied in Senate Bill 748 of the 1978 session, "which ultimately failed to pass," "was modeled after the American Bar Association's Model Procurement Code." The report is silent as to the issue presented in the case at bar.

Art. 21, § 3–202 pertains to competitive sealed bidding. Subsection (h) stated at the time here relevant, "After bid opening, correction or withdrawal of bids may be allowed only (1) if permitted by the regulations of the department, and (2) upon written approval by the State Law Depart-

ment."[1] It differs from § 3–202(6) of the American Bar Association Model Procurement Code approved in February 1979. The latter states:

> *"Correction or Withdrawal of Bids; Cancellation of Award.* Correction or withdrawal of inadvertently erroneous bids before or after award, or cancellation of awards or contracts based on such bid mistakes, shall be permitted in accordance with regulations promulgated by the Policy Office. After bid opening no changes in bid prices or other provisions of bids prejudicial to the interest of the [State] or fair competition shall be permitted. Except as otherwise provided by regulation, all decisions to permit the correction or withdrawal of bids, or to cancel awards or contracts based on bid mistakes, shall be supported by a written determination made by the Chief Procurement Officer or head of a Purchasing Agency." (Bracketed word in original.)

It will be noted that the latter has a provision in it forbidding changes in bid prices.

Subsequent to the enactment of Art. 21, the Board of Public Works and certain other agencies adopted COMAR 21.05.02.12D, which we have heretofore quoted. As we have indicated, it contains a provision forbidding changes in price. Accordingly, it differs from Recommended Regulation R3–202.13.5 of the American Bar Association Recommended Regulations, which states:

> *"Mistakes Discovered After Award.* Mistakes shall not be corrected after award of the contract except where the Chief Procurement Officer or the head of a Purchasing Agency makes a written determination that it would be unconscionable not to allow the mistake to be corrected."

---

1. "Department" is defined by Maryland Code (1957, 1981 Repl.Vol., 1984 Cum. Supp.) Art. 21, § 1–101(i) as meaning "the Departments of General Services, Transportation, Budget and Fiscal Planning, and the University of Maryland."

The absence of a provision relative to changes in price undoubtedly is because this was covered in the recommended code provision and thus it was unnecessary for it to be in the regulation.

The American Bar Association Model Procurement Code states, "Code Commentary is used, where appropriate, to explain the rationale underlying various Sections, to aid in the interpretation of the statutory language, and to provide guidance in the development of regulations." The commentary to § 3–202(6) in the Model Code reads in part:

"(1) Correction or withdrawal of bids before or after contract award requires careful consideration to maintain the integrity of the competitive bidding system, to assure fairness, and to avoid delays or poor contract performance. While bidders should be expected to be bound by their bids, circumstances frequently arise where correction or withdrawal of bids is proper and should be permitted.

"(2) To maintain the integrity of the competitive sealed bidding system, a bidder should not be permitted to correct a bid mistake after bid opening that would cause such bidder to have the low bid unless the mistake is clearly evident from examining the bid document; for example, extension of unit prices or errors in addition.

"(3) An otherwise low bidder should be permitted to correct a material mistake of fact in its bid, including price, when the intended bid is obvious from the bid document or is otherwise supported by proof that has evidentiary value. A low bidder should not be permitted to correct a bid for mistakes or errors in judgment.

"(4) In lieu of bid correction, the [State] should permit a low bidder alleging a material mistake of fact to withdraw its bid when there is reasonable proof that a mistake was made and the intended bid cannot be ascertained with reasonable certainty.

"(5) After bid opening an otherwise low bidder should not be permitted to delete exceptions to the bid conditions or specifications which affect price or substantive obliga-

tions; however, such bidder should be permitted the opportunity to furnish other information called for by the Invitation for Bids and not supplied due to oversight, so long as it does not affect responsiveness.

"(6) ...

"(7) Correction of bid mistakes after award should be subject to the same proof as corrections before award with a further requirement that no correction be permitted that would cause the contract price to exceed the next low bid.

"(8) ...." (Bracketed word in original.)

## II

Appellee John W. Brawner Contracting Company, Inc., was the low bidder for construction of the Marine Service Building at the Dundalk Marine Terminal of the Maryland Port Administration (MPA). After the award of the contract to Brawner, it discovered an arithmetical error of $10,000 in its bid based upon a similar error of like amount in a quotation made to it by a subcontractor. The subcontractor notified Brawner and MPA of the error. A meeting was arranged between representatives of MPA, Brawner, and the subcontractor. The subcontractor produced its work sheet and explained the nature and extent of its error. Despite the error, Brawner and the subcontractor proceeded under the contract. Correction of the error would not have caused Brawner's contract price to equal or exceed that of the next lowest bidder. MPA's representative denied Brawner's claim for a change. His jurisdiction arose under Art. 21, § 7–201. Pursuant to § 7–202 Brawner appealed to the State Board of Contract Appeals.

The Board said:

"There is no dispute here that an arithmetical error was made by Appellant's subcontractor in submitting a bid on the interior plumbing required under the captioned contract. Likewise, the intended bid price has been established by credible evidence of record. The issue before us

is whether these facts permit Appellant to obtain reformation or price correction on behalf of its mistaken subcontractor."

It referred to that portion of Art. 21, § 1–201 which states:

"(b) *Purposes and policies.*—The underlying purposes and policies of this article are, among others to:

"(1) Provide for increased public confidence in the procedures followed in public procurement;

"(2) Insure the fair and equitable treatment of all persons who deal with the procurement system of this State;

\* \* \* \* \* \*

"(6) Provide safeguards for the maintenance of a procurement system of quality and integrity."

The Board went on to state:

"Prior to the enactment of Code Article 21, reformation was the sole remedy available to a contractual party, under appropriate circumstances, for correction of mistakes, including those involving price. *Housing Equity Corporation v. Joyce*, 265 Md. 570, 580 [290 A.2d 769] (1972); *Painter v. Delea*, 229 Md. 558, 564 [184 A.2d 913] (1962); *Flester v. The Ohio Casualty Insurance Company*, 269 Md. 544, 556 [307 A.2d 663] (1973). The MPA's interpretation of COMAR 21.05.02.12D thus represents a restriction on the application of equity as it traditionally has been practiced by the courts of this State. In view of the underlying purpose and policies of Maryland's procurement law, such an interpretation and result would not be consistent with the intent of the Legislature in enacting Code Article 21.

"COMAR 21.05.02.12D, in our view, was intended by its drafters to substitute an informal and relatively fast administrative process for more cumbersome judicial procedure. The regulation was derived from a body of recommended regulations prepared by the American Bar Association to implement its Model Procurement Code. Because the Model Procurement Code and its regulations incorporate Federal contracting principles, we look to the

Federal common law for guidance in interpreting the regulation in question here.

"Correction of a mistake determined after award (i.e., reformation) is permitted administratively in Federal contracting where either (1) a mutual mistake has been made, (2) a contracting (procurement) officer has actual or constructive notice of the mistake, or (3) where the contract otherwise is unconscionable. Hagberg, Mistake in Bid, Including New Procedures Under Contract Disputes Act of 1978, 13:2 Public Contract Law Journal 257, 298 (1983). Reformation of bids or publicly bid contracts has been limited in Federal forums, however, by considerations involving the integrity of the competitive bid system."

The Board further said:

"This regulation expressly permits correction of a mistake but not a change in price. This language is consistent with the Federal common law. Where a contractor seeks to conform a contract price to the amount which he intended at the time of bid, he is asking to correct an error. If the intended bid is proven with clear, strong and convincing evidence, the procurement officer may permit such a correction under COMAR 21.05.02.12D where it would be unconscionable not to do so. On the other hand, if a contractor seeks to alter a contract price based on factors which he either failed to consider or improperly evaluated at the time of bid, he is seeking to change his bid price. This would be impermissible under both existing equitable principles and Maryland's procurement regulations. This interpretation, we conclude, gives meaning to COMAR 21.05.02.12D and is consistent with the Legislature's intent in enacting Code Article 21."

The Board said that the MPA procurement officer in his decision failed to comply with the requirements of COMAR 21.10.04.01B as to what was to be included in his decision, asserted that it did not know the basis for his decision, and stated that it was not "satisfied that he exercised the discretion expressly given him by COMAR 21.05.02.12D."

Accordingly, the case was "remanded to the MPA procurement officer and his agency head for the required discretionary determination as to whether it would be unconscionable, under the facts present, not to permit the correction asked for."

Pursuant to the provisions of Art. 21, § 7–203, the Maryland Port Administration appealed to the Circuit Court for Baltimore City.

## III

Appellee J. Roland Dashiell & Sons, Inc., was the low bidder by $542,000 on a contract for construction of a laboratory at the Department of Agriculture Headquarters Building in Annapolis. After award to it of the contract, Dashiell discovered that it had made an error in extending certain unit prices. Accordingly, its bid was too low by $110,581 plus $400 for each optional temperature recorder. It, too, elected to proceed with its contract rather than to seek rescission. Pursuant to Art. 21, § 7–201, Dashiell requested the Department of General Services procurement officer to allow it to recover this error. Nothing was requested for overhead expenses. This request was denied with reliance on COMAR 21.05.02.12D.

An appeal to the Board of Contract Appeals followed. That Board noted, "The DGS procurement officer has not made a finding concerning whether it would be unconscionable not to allow the mistake to be corrected." It referred to its decision handed down on the same day pertaining to Brawner, said, "[T]he DGS procurement officer and agency head have not exercised the discretion given them by CO-MAR 21.05.02.12D," and "remand[ed] the appeal to the DGS procurement officer for further consideration consistent with [the Board's] opinion." An appeal to the Circuit Court for Baltimore City followed.

## IV

The two cases were consolidated in the circuit court. The circuit court said:

"Art. 21 of the Annotated Code and Title 21 of COMAR are based on the Model Code and Model Regulations promulgated by the Councils of the Sections of Public Contract Law and Urban, State and Local Government Law of the American Bar Association. Art. 21, § 3–202(h), following the model code, leaves the method for dealing with mistaken bid problems to the regulations. The model regulations and COMAR divide the mistaken bid problem into three periods, viz., (1) pre-opening, (2) post-opening (but pre-award), and (3) post-award.[2] If the model regulations and COMAR are read literally, there appears to be an anomaly in that there are detailed criteria established for the first two periods but the only criterion for the third is unconscionability. Logic would dictate that the same criteria applicable to the first and second periods with additional criteria should apply to the third period. Strangely, the comment to the Model Code suggests such criteria, but the Model Regulations contain none. While it is possible it was intended by the drafts-men of the Model Regulations and of COMAR that the

---

2. COMAR 21.05.02.12B and C provide:

"B. Mistakes Discovered Before Opening. A bidder may correct mistakes discovered before the time and date set for bid opening by withdrawing or correcting the bid as provided in Regulation .09.

"C. Confirmation of Bid. When the procurement officer knows or has reason to conclude that a mistake has been made, the bidder may be requested to confirm the bid. Situations in which confirmation should be requested include obvious, apparent errors on the face of the bid or a bid unreasonably lower than the other bids submitted. If the bidder alleges mistake, the bid may be corrected or withdrawn if any of the following conditions are met:

"(1) If the mistake and the intended correction are clearly evident on the face of the bid document, the bid shall be corrected to the intended correct bid and may not be withdrawn. Examples of mistakes that may be clearly evident on the face of the bid document are typographical errors, errors in extending unit prices, transposition errors, and arithmetical errors.

"(2) A bidder may be permitted to withdraw a low bid if:

"(a) A mistake is clearly evident on the face of the bid document but the intended correct bid is not similarly evident; or

"(b) The bidder submits proof of evidential value which clear-ly and convincingly demonstrates that a mistake was made."

criteria applicable to the first two periods would also apply to the third, literally read they do not.

"Although not expressly stated in the statute or the regulations, apparently the legislative intention was for the Maryland statute and COMAR to supplant existing law with respect to resolution of mistaken bid problems. Absent a specific statute, the courts across the country have applied common law contract and equitable principles to resolution of issues raised by mistaken bids. There are numerous cases resolving disputes and granting relief from mistaken bids in each of the three periods provided for in COMAR. See, *e.g.*, 2 A.L.R. 4th 991, and 48 Cincinnati Law Rev. 43. There are Maryland cases involving mistaken bids in the pre-award periods, see *Baltimore v. DeLuca-Davis Construction Company*, 210 Md. 518 [124 A.2d 557] (1956) and *Baltimore County v. John K. Ruff, Inc.*, 281 Md. 62 [375 A.2d 237] (1977), see also 38 Opinions of Attorney General 245 (1953), and 32 Opinions of Attorney General 86 (1947), but none involving the post-award period has been found. However, there is no reason to believe that, absent statutory intervention, the Maryland courts would not have granted relief pursuant to general contract law and equitable principles in post-award cases.

"Although there may be, as appellants argue, matters other than price with respect to which a mistake can be made in a bid, none has been suggested which is of any substance. No reported case involving a mistaken bid has been found in which the mistake did not affect the ultimate contract price and in which the relief sought was other than correction of the contract price. Price is the very essence of competitive bidding. It is difficult to believe that in the face of existing common law which permits such correction that the promulgators of COMAR intended to deny all relief with respect to price mistakes in the post-award period. To do so would be in derogation of common law. It is also difficult to conclude that the promulgators would apply the high standard of

unconscionability for the correction of the type of insubstantial mistakes suggested by appellants. While mere changes are forbidden, corrections required by conscience are not."

The State promptly appealed to the Court of Special Appeals. We granted a writ of certiorari prior to argument in the intermediate appellate court in order that we might address the important public questions here presented.

## V

Our cases are clear that prior to the enactment of Art. 21 contractors such as Brawner and Dashiell, placed in the situation in which they now find themselves, would not have been permitted to reform their contracts. Their only remedy would have been that of rescission. A case strikingly similar to the one at bar is *Baltimore v. DeLuca-Davis Co.*, 210 Md. 518, 124 A.2d 557 (1956). The contractor there submitted a bid to the City of Baltimore which was $589,880 less than was intended. The error was discovered after the bids were opened but before a contract was awarded. Five days after the bids were opened, DeLuca-Davis wrote the Board of Estimates explaining how the mistake occurred, and requesting the Board either to correct the bid accordingly or to return the bid and the certified check for $50,000, which had accompanied it pursuant to the applicable charter provision and the notice of letting. DeLuca-Davis was advised that the City proposed to accept its original bid. Then, DeLuca-Davis, as the Court put it, "filed a bill of complaint in the Circuit Court of Baltimore City, praying a mandatory injunction or decree commanding the Board of Estimates either to correct or reform its mistaken bid or, in the alternative, that the court permit the appellee to rescind the bid and have both the bid and the certified check returned." 210 Md. at 521, 124 A.2d at 558. Judge Hammond said for the Court on the issue of reformation:

"It is manifest to us that the City is correct in saying that there cannot be reformation, for at least two reasons. In the first place, to warrant the equitable remedy

of reformation the mistake must have been mutual. *Phelps, Juridical Equity,* Sec. 227; *Dulany v. Rogers,* 50 Md. 524, 533 [ (1879) ]; *Stiles v. Willis,* 66 Md. 552 [, 8 A. 353 (1887) ]; *Miller v. Stuart,* 107 Md. 23 [, 68 A. 273 (1907) ]; *White v. Shaffer,* 130 Md. 351, 360, 361 [, 99 A. 66 (1917) ]; *England v. Gardiner,* 154 Md. 510, 514, 515 [, 142 A. 625 (1928) ]; *Brockmeyer v. Norris,* 177 Md. 466 [, 10 A.2d 326 (1940) ]; *Hoffman v. Chapman,* 182 Md. 208 [, 34 A.2d 438 (1943) ]. See also *Com. De Astral v. Boston Metals Co.,* 205 Md. 237, 271 [, 107 A.2d 357, 108 A.2d 372 (1954) ]. Here the mistake was entirely that of the contractor and not induced by any act or omission of the City, so that it is entirely unilateral even under the perhaps fictional theory that if the act of one party is induced by the other, the mistake is mutual. More important than the first reason why there cannot be reformation is the second, namely, that a court will never in the name of reformation rewrite a contract or make a contract for the parties or act unless there is clear, convincing and satisfying proof of a mutual understanding and bargain that has not been accurately expressed. *Phelps, Juridical Equity,* Sec. 227; *Second National Bank v. Wrightson,* 63 Md. 81 [ (1885) ]; *Keedy v. Nally,* 63 Md. 311 [ (1885) ]; *Milligan v. Pleasants,* 74 Md. 8 [, 21 A. 695 (1891) ]; *Hesson v. Hesson,* 121 Md. 626 [, 89 A. 107 (1913) ]; *White v. Shaffer,* 130 Md. 351 [99 A. 66], *supra; England v. Gardiner,* 154 Md. 510 [142 A. 625], *supra; Hoffman v. Chapman,* 182 Md. 208 [34 A.2d 438], *supra; Martz v. Jones,* 189 Md. 416 [, 56 A.2d 30 (1947) ]; *Com. De Astral v. Boston Metals Co.,* 205 Md. 237, 271 [107 A.2d 357], *supra; Pomeroy, Equity Jurisprudence,* 5th Ed., Sec. 870 a; 5 *Williston, Contracts,* Revised Edition, Sec. 1548, p. 4339; *Restatement, Contracts,* Sec. 504." 210 Md. at 524–25, 124 A.2d at 560.

The Court stated, "Although reformation requires that the mistake be mutual, rescission may be granted whether the mistake be that of one or of both of the parties. *Phelps, Juridical Equity,* Sec. 227." 210 Md. at 526, 124 A.2d at

561. It considered the issue of whether rescission might be granted against a public body such as the City of Baltimore, particularly in light of § 38 of the Baltimore City Charter. The Court held "that DeLuca-Davis [was] entitled to cancellation of its bid and the return of its deposit." 210 Md. at 537, 124 A.2d at 567.

Yet another case involving rescission is *Baltimore County v. John K. Ruff, Inc.,* 281 Md. 62, 375 A.2d 237 (1977). Ruff was the low bidder in connection with the construction of a classroom building for the Catonsville Community College. On the same day that bids were opened it discovered a mistake of $253,371. The project's architect and Baltimore County were informed the same day. A meeting was held. Judge Eldridge summarized for the Court:

"At the meeting Ruff explained how the mistake came about. As a result of that meeting, a letter was sent by Ruff to the defendants, giving formal written notice of the error along with a request to withdraw the bid and bid bond. The defendants did not grant Ruff's request, and, on February 19, 1975, Ruff was sent the contract for the humanities building. However, Ruff refused to sign the contract. The defendants then demanded that the Seaboard Surety Company perform under its bid bond, but the surety declined on the ground that Ruff did not breach its bid by refusing to sign the contract in light of the 'patent, honest and obvious clerical mistake.' By letter dated March 12, 1977, the defendants informed Ruff and Seaboard Surety that they were going to award the contract to the second low bidder and would hold Ruff and Seaboard Surety 'responsible for the consequential damages.' " 281 Md. at 64, 375 A.2d at 238.

Ruff brought an action seeking rescission of the bid and the return of the bid bond. The Court referred extensively to the opinion in *DeLuca-Davis.* We held "that the chancellor was warranted in concluding that to make Ruff go through with its bid would be unconscionable." 281 Md. at 68, 375 A.2d at 240.

■ It will be recalled that the Board of Contract Appeals said that prior to the enactment of Art. 21 "reformation was the sole remedy available to a contractual party ... for correction of mistakes, including those involving price," citing *Housing Equity Corp. v. Joyce*, 265 Md. 570, 290 A.2d 769 (1972); *Flester v. Ohio Cas. Ins. Co.*, 269 Md. 544, 556, 307 A.2d 663 (1973), and *Painter v. Delea*, 229 Md. 558, 564, 184 A.2d 913, 916 (1962). It erred. First of all, as we have indicated in our citations from *DeLuca-Davis* and *Ruff*, rescission would have been available as a remedy in the case at bar. Secondly, in *Housing Equity* Judge Singley said for the Court:

"Equity will reform a written document when and only when there is a mutual mistake of fact or a mistake is made by one of the parties accompanied by fraud, duress or other inequitable conduct practiced on the person making the mistake by another party, *Mattingly v. Houston*, 235 Md. 54, 200 A.2d 160 (1964); *Painter v. Delea, Att'y*, 229 Md. 558, 184 A.2d 913 (1962); *Moyer v. Title Guarantee Company*, 227 Md. 499, 177 A.2d 714 (1962)." 265 Md. at 580, 290 A.2d at 774.

In *Flester*, after a lengthy quotation from *Moyer v. Title Guarantee Co.*, 227 Md. 499, 504, 177 A.2d 714, 716 (1962), also quoted in *Housing Equity*, Judge Levine said for the Court:

"From these and other authorities emerges the fundamental principle that although courts exercising equity powers may reform an instrument to conform it to the intention of the parties, *Mattingly v. Houston*, 235 Md. 54, 200 A.2d 160 (1964); *Painter v. Delea, Att'y*, 229 Md. 558, 184 A.2d 913 (1962), a written document will be reformed when and only when there is a mutual mistake of fact, or a mistake is made by one of the parties accompanied by fraud, duress or other inequitable conduct practiced on the person making the mistake by another party, *Housing Equity Corp. v. Joyce; Mattingly v. Houston; Painter v. Delea, Att'y; Moyer v. Title*

*Guarantee Co.,* all *supra.*" 269 Md. at 556, 307 A.2d at 669.

*Painter,* 229 Md. 558, 184 A.2d 913, cited by the Court in both *Housing Equity* and *Flester,* is to similar effect.

 It is clear from the above statements of the law that one of two circumstances must exist before a court of equity will reform a written contract: either there must be mutual mistake, or there must be fraud, duress, or inequitable conduct. The mistake here was unilateral. There is no allegation of fraud, duress or inequitable conduct. Accordingly, reformation would not have been an available remedy prior to the enactment of Art. 21. We find nothing in Art. 21 indicating an intent to change the common law in this regard.

Reference was made in the briefs and at oral argument to federal cases. It is conceded, however, that there is no federal rule similar to that in COMAR 21.05.02.12D stating that changes in price are not permitted. Therefore, those cases are inapposite.

As we have indicated, the genesis of Art. 21 and COMAR 21.05.02.12D was Joint Resolution 28 in 1977. In it the General Assembly spoke of "sound purchasing operations" as "basic to public confidence and trust in government . . . ." It will be recalled that the Board of Contract Appeals quoted from Art. 21, § 1–201:

"(b) *Purposes and policies.*—The underlying purposes and policies of this article are, among others to:

"(1) Provide for increased public confidence in the procedures followed in public procurement;

"(2) Insure the fair and equitable treatment of all persons who deal with the procurement system of this State;

\* \* \* \* \* \*

"(6) Provide safeguards for the maintenance of a procurement system of quality and integrity."

We see this rule as aimed at prevention of any chicanery in the bid process and as intended to instill public confidence in the bidding process, all of which is in line with § 1–201(b)

and the commentary to the relevant section in the American Bar Association Model Procurement Code.

The rule here was adopted pursuant to statutory authority. It has the force and effect of law. We have said that our holdings relative to the interpretation of statutes are equally applicable to the interpretation of rules. *See, e.g., Maryland Comm'n on Human Rel. v. Beth. Steel,* 295 Md. 586, 592–93, 457 A.2d 1146, 1149 (1983); *Pappas v. Pappas,* 287 Md. 455, 465, 413 A.2d 549, 553 (1980); *Messitte v. Colonial Mortgage Serv.,* 287 Md. 289, 293, 411 A.2d 1051, 1053 (1980); *Bartell v. Bartell,* 278 Md. 12, 17, 357 A.2d 343, 346 (1976). A fundamental rule of statutory construction is that no word, clause, sentence or phrase should be rendered surplusage, superfluous, meaningless, or nugatory. *Management Personnel Serv. v. Sandefur,* 300 Md. 332, 341, 478 A.2d 310, 315 (1984), and cases cited. To hold with appellees here would be to ignore the clear provisions of the sentence stating, "Changes in price are not permitted," and would render that language nugatory. We hold that the circuit court and the Board of Contract Appeals erred.

JUDGMENTS REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; APPELLEES TO PAY THE COSTS.