Dear Mr. O'Donnell:
You have asked for our opinion on which State agency purchases of residential and similar human, social, cultural, and educational services[1] constitute "procurement contracts" that trigger application of the lobbying provisions of the Maryland Public Ethics Law. We understand that, in administering those lobbying provisions, the State Ethics Commission ("the Commission") has encountered instances in which lay "interveners" have been engaged by human services providers to assist in their dealings with State agencies. You ask our opinion concerning two specific types of contracts, administered by the Department of Juvenile Justice and the Developmental Disabilities Administration of the Department of Health and Mental Hygiene, respectively.
As a general rule, State agency purchases of human services fall within the definition of "procurement contract." However, particular transactions may be exempt from that definition as "Medicaid, Judicare, or similar reimbursement contract[s]" for which the law sets eligibility standards and price. Because it is often not immediately apparent whether that exemption applies to a particular transaction, the nature of each type of purchase must be examined, together with any law and regulations governing the program under which the purchase is made. With respect to the two types of contracts you mention, we conclude that one involves procurement contracts, while the other does not.
 I The Maryland Public Ethics Law, Lobbying, and Procurement Contracts
Under the Maryland Public Ethics Law, any entity that is employed to influence executive action on a procurement contract that exceeds $100,000 must register with the Commission as a "regulated lobbyist," and must comply with other provisions of the ethics law regarding lobbyists. Annotated Code of Maryland, State Government Article ("SG"), § 15-701(a)(3).[2] The ethics law defines "procurement contract" by cross-reference to the State procurement law. SG, § 15-102(ee) (incorporating definition of "procurement contract" in State Finance and Procurement Article ("SFP"), § 11-101).
The procurement law defines "procurement contract" broadly, as "an agreement in any form entered into by a unit for procurement." SFP, § 11-101(n)(1).[3] However, certain contracts are specifically excluded from the definition. Pertinent to your question, the definition excludes:
 a Medicaid, Judicare, or similar reimbursement contract for which law sets:
1. user or recipient eligibility; and
2. price payable by the State.
SFP, § 11-101(n)(2)(iii).[4]
You indicate that the Commission is currently considering two matters that require application of this definition: (1) one involves a purchase by the Developmental Disabilities Administration of housing for developmentally disabled individuals, and (2) the other relates to a purchase by the Department of Juvenile Justice of residential services for delinquent girls. In addition, we understand that the Commission seeks our opinion on the status under the procurement law of State agency purchases of other human, social, cultural, and educational services.
 II The Procurement Law and Human Services Contracts
The application of State procurement law to the purchase of human services has been a matter of debate since the genesis of the State's comprehensive procurement law.[5] That debate has inspired modification of the procurement law to accommodate the particular nature of these services. Nevertheless, most human services contracts continue to be awarded under the procurement law. Even more pertinent to the Commission's concerns, most human services contracts continue to fit the definition of "procurement contract" under both the procurement and public ethics laws.
 A. Development of Procurement Law in Relation to Human Services Contracts 1. Adoption of State Procurement Law
When the State procurement law was first enacted in 1980, it included an exemption, much like the one now contained in SFP, § 11-101(n)(2)(iii), for "Medicaid, judicare, or similar reimbursement contracts for which user eligibility and cost are set by law or by rules and regulations." Chapter 775, Laws of Maryland 1980, then codified at Annotated Code of Maryland, Article 21, § 1-101(f)(2)(ii). The rationale for that exemption appears to have been that there was little need for the administrative control procedures newly established by the procurement law where major aspects of the award of a contract were already controlled by other law or regulations.
Because relatively few human services contracts came within the exemption, it appeared that most such contracts would be awarded under the new procurement law. There was apprehension among providers of human services, as well as within State agencies that awarded human services contracts, that administrative controls appropriate for the acquisition of supplies, construction, and other types of services would be an uneasy fit for purchases of human services. For example, there were concerns that, in awarding contracts for human services, agencies would be required to give inappropriate preference to "low bids" and would not be permitted to give adequate consideration to individual client needs, continuity of care, proven provider success with particular client populations, and similar factors.
 2. Revision of Procurement Law — Mid-1980's
To assess these concerns about the application of the procurement law to purchases of human services, the Board of Public Works (the "Board") in April 1982 established an ad hoc
subcommittee, known as the Platman Committee,[6] which was charged with making recommendations to the Board and the General Assembly. Chapter 141, Preamble, Laws of Maryland 1982. In the meantime, the General Assembly passed emergency legislation requiring each procurement department[7] to adopt regulations setting conditions and procedures under which human services could be purchased through methods other than those established for procurements generally, and exempting those purchases from the procurement law during the interim. Chapter 141, Laws of Maryland 1982.[8]
In its final report, the Platman Committee recommended that, rather than exempt human services generally from the procurement law, the State should tailor the procurement law and regulations to address the concerns that had been expressed about their application to human services contracts. Report of the Ad HocAdvisory Subcommittee on the Purchase of Human, Social, Cultural,and Educational Services to the Maryland General Assembly
(September 1983); see also Chapter 292, Preamble, Laws of Maryland 1984. In this regard, the Committee expressed its belief that the procurement process could be structured to deal with transitional care and associated funding problems, and to assure the satisfaction of "minimum program standards" established by the agencies responsible for purchasing human services.
At its 1984 session, the General Assembly responded by amending the procurement law in the following key respects pertinent to human services contracts:
 It added a new method of procurement, denominated "noncompetitive negotiated procurement," specifically for certain human services;[9]
 It declared "competitive negotiation," now called "competitive sealed proposals," the preferred method of awarding contracts for human services;[10] and
 It exempted certain procurements of human services — i.e., "procurements by the Maryland State Planning Council on Developmental Disabilities for services to support demonstration, pilot, and training programs," and "procurements by the Maryland State Arts Council for the promotion or support of the arts" — from most of the provisions of the procurement law. [11]
 Chapter 292, § 2, Laws of Maryland 1984. The general exemption for Medicaid, Judicare, and similar reimbursement contracts was retained without amendment.
In addition, the 1984 legislation extended for an additional year the total exemption from the procurement law granted to human services contracts, while various agencies developed standards and regulations to govern the award of those contracts. Chapter 292, § 1, Laws of Maryland 1984. In particular, the General Assembly directed the Department of Health and Mental Hygiene,[12] the Department of Human Resources, and the Office on Aging to develop regulations "pertaining to program standards for human and social services," and it ordered "the appropriate procurement departments. . ., in consultation with [those three agencies, to develop] regulations generally concerning continuity of care in provision of human and social services to individuals who are aged, indigent, disadvantaged, unemployed, mentally or physically ill, handicapped, displaced, or minors." Id.
 B. Procurement Regulations
As directed, the Board and the procurement departments have adopted regulations that incorporate the 1984 statutory amendments and provide administrative standards required by that legislation. COMAR 21.14.01.01-.07.[13] Those regulations acknowledge that the competitive sealed proposals method is the preferred method for procuring human services, but also permit an agency to use competitive sealed bidding or noncompetitive negotiation (when permitted by law) to obtain those services. COMAR 21.14.01.03. In specified circumstances, agencies may procure human services under the small procurement, sole source, and emergency procurement methods. Id. For certain agencies most likely to procure human and social services,[14] the regulations require that solicitations for such services refer to and require compliance with "program standards" adopted by the procurement agency, that solicitation selection criteria include, as applicable, minimum provider, staff, facility, performance, program, and fiscal accountability standards, and that solicitations inquire, where relevant, about providers' plans to ease the transition from one provider to another. COMAR21.14.01.05. They also permit agencies to enter into sole source or multi-year contracts for human or social services under certain conditions, if such contracts are necessary to assure continuity of care for the individuals receiving services. COMAR 21.14.01.06.
The regulations reiterate the statutory requirements for use of the noncompetitive negotiated procurement method and list the types of services for which that method may be used, including recruitment of an employer for a job training program, purchase of "[g]roup foster care services for children or adults under a negotiated rate system adopted by regulation," and purchase of various residential, community rehabilitation, and group home services for the mentally ill. COMAR 21.14.01.04.
The Board has delegated to the Department of Budget and Management authority to approve human services contracts of $200,000 or less. Except for an emergency procurement, any contract that exceeds $200,000 must be approved by the Board. COMAR 21.14.01.07.[15]
These regulations contemplate that most human services will be purchased under one of several methods described in the procurement law. The regulations do not elaborate on the exemption for Medicaid, Judicare, and similar reimbursement contracts.
 C. Contracts Exempt under SFP, § 11-101(n)(2)(iii)
As previously stated, under SFP, § 11-101(n)(2)(iii), the term "procurement contract" does not include "a Medicaid, Judicare, or similar reimbursement contract for which law sets: 1. user or recipient eligibility; and 2. price payable by the State." On its face, this exemption applies to Medicaid contracts — i.e., contracts awarded under the Maryland Medical Assistance Program, Health General Article, Title 15, Subtitle 1 — and to Judicare contracts — i.e., contracts awarded by the Department of Human Resources' Community Services Administration under COMAR07.06.10.03-.12, primarily to obtain civil legal services for eligible low-income persons residing in rural counties not served by Legal Aid. As the exemption suggests, the Medicaid and Judicare programs are governed by law or regulations, or both, that prescribe both eligibility standards and the price payable by the State. Medicaid and Judicare contracts are generally referred to as "reimbursement" contracts, even though they may not strictly require the provider that is ultimately paid by the State first to have made expenditures of its own funds.
The exemption in SFP, § 11-101(n)(2)(iii) also applies to "similar reimbursement contracts for which law sets" eligibility standards and price (emphasis added). We think it clear that the term "law" is intended to include agency regulations. As originally enacted in 1980, the exemption referred to "contracts for which user eligibility and cost are set by law or by rules andregulations" (emphasis added). The deletion of the latter phrase in 1988 was part of a new definition of "procurement contract," "derived without substantive change from [the prior definition of "contract" at SFP, § 11-101(k)]." Chapter 48, Laws of Maryland 1988, Revisor's Note, at p. 1571. Furthermore, even in the absence of a specific reference, agency regulations adopted pursuant to statutory authority have the force and effect of law. MarylandPort Administration v. John W. Brawner Contracting Co.,303 Md. 44, 60, 492 A.2d 281 (1985); 75 Opinions of the AttorneyGeneral 37, 48 (1990).
Although, to our knowledge, there is no catalog of the contracts that fit within this exemption, we do not believe the category to be large. Essentially, it encompasses reimbursement contracts for human services in which the key terms of client eligibility and price paid to the provider are dictated by other law.
 D. Summary
As a result of the statutory and regulatory developments described above, there are currently a number of possible scenarios under which State agencies may award contracts for the purchase of human services. Most such contracts will be awarded under State procurement law and regulations — sometimes under the noncompetitive negotiated procurement method created by 1984 legislation, sometimes under the preferred "competitive sealed proposals" method, and sometimes under one of the other procurement methods listed in SFP, § 13-102(a). A contract awarded by any of these methods is a "procurement contract" under the State procurement law, and under the Maryland Public Ethics Law, as well. Only a subset of purchases of human services — one we do not believe to be large — is exempt under SFP, § 11-101(n).
One of the specific types of contracts about which you have inquired involves the acquisition of housing services for developmentally disabled individuals. Under these contracts, the Developmental Disabilities Administration pays or reimburses private service providers who have been accepted into the Fee Payment System described in COMAR 10.22.17, either out of Medicaid funds or State general funds. Eligibility for the program is governed by COMAR 10.09.26 (for services eligible under Medicaid waiver) or by COMAR 10.22.18 (for State-funded services), and the price paid by the State is set by COMAR 10.22.17. As indicated inDepartment of Health Mental Hygiene v. Chimes, 343 Md. 336,341, 681 A.2d 484 (1996), this program (then called the Prospective Payment System) plainly falls within the exemption in SFP, § 11-101(n)(2)(iii). Thus, one of the examples cited in your letter appears to be a type of contract excluded from the definition of "procurement contract" in SFP, § 11-101(n). Accordingly, this type of contract is also excluded from the term defined in the Maryland Public Ethics Law, SG, § 15-102(ee).
The other example cited in your letter, contracts by which the Department of Juvenile Justice acquires residential services for delinquent girls, does not fall within the same exemption. Neither Article 83C, which contains most of the statutes specifically related to the Department of Juvenile Justice, nor COMAR Title 16, the Department's regulations, describes a detailed program — including eligibility standards for recipients and a schedule of or parameters for payments to be made by the State — for the reimbursement or payment of private entities providing residential services to juveniles under the Department's jurisdiction. Thus, such a contract would not be exempt from the definition of "procurement contract."[16]
 III Conclusion
Most State agency purchases of human services are likely to be "procurement contracts" fully subject to the State's procurement law and regulations. However, some purchases are exempt from the definition of "procurement contract" under SFP, § 11-101(n)(2)(iii), because they are "reimbursement contracts" for which eligibility standards and price are set by statute or regulation. With respect to the two types of contracts you inquired about, one type (the Developmental Disabilities Administration contracts) is exempt from the definition of "procurement contract," and the other type (the Department of Juvenile Justice contracts) falls within the definition of "procurement contract." Other categories of human services contracts will have to be examined individually to determine whether they come within this narrow exemption. This Office stands ready to assist the Commission in analyzing the status of particular classes of contracts.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Judith A. Armold Assistant Attorney General
_________________________ Robert N. McDonald Chief Counsel Opinions and Advice
[1] Human, social, cultural, and educational services are sometimes collectively referred to below, for the sake of brevity, as "human services." The term refers generally to services that are provided directly to individuals by service providers under contract with a State agency, as distinct from services that are provided directly to the contracting State agency itself.
[2] This provision, which was part of a 1994 amendment to the Public Ethics Law, originally referred to "persons" rather than "entities" and used the term "lobbyist" rather than "regulated lobbyist." Chapter 678, Laws of Maryland 1994. The changes in wording are the result of a 1995 code revision that was not intended to effect substantive changes. See Revisor's Notes, Chapter 533, Laws of Maryland 1995, at pp. 3015, 3073.
[3] The term "procurement" includes "the process of . . . buying or otherwise obtaining supplies, services, construction. . . ." SFP, § 11-101(m)(1).
[4] The statute also excludes from the definition three other categories of contracts not relevant to your question: collective bargaining agreements, agreements with contractual employees, and certain Medicaid contracts with managed care organizations. See SFP, § 11-101(n)(i), (ii), and (iv).
[5] Indeed, we understand that there are currently two task forces looking at the procurement of human services by the Department of Health and Mental Hygiene and by the Developmental Disabilities Administration.
[6] The committee was chaired by Stanley R. Platman, M.D., then Assistant Secretary of the Department of Health and Mental Hygiene.
[7] "Department" was then defined in the procurement law to mean the Departments of General Services, Transportation, and Budget and Fiscal Planning, together with the University of Maryland. Former Article 21, § 1-101(i) (1981). The procurement law currently denotes these agencies and certain others as "primary procurement units." SFP, § 11-101(l). In addition to the Board of Public Works, which was assigned overall supervision and policy direction with respect to the State's procurement activities, these were the agencies to which the General Assembly initially granted primary regulatory authority over the procurement of supplies, services, construction, and other items. Former Article 21, § 2-101 (1981).
[8] The Board postponed for one year the original September 30, 1982 deadline it had set for the final report of the Platman Committee, to September 30, 1983. Similarly, the statutory exemption and the deadline for adoption of regulations that were included in Chapter 141, Laws of Maryland 1982, originally June 30, 1983, were extended to June 30, 1984 by Chapter 628, Laws of Maryland 1983.
[9] The noncompetitive negotiated procurement method is currently codified in SFP, § 13-106 and is largely unchanged from its original enactment. It may be used only in procuring human, social, or educational services for aged, indigent, disadvantaged, unemployed, mentally or physically ill, handicapped, displaced, or minor individuals. SFP, § 13-106(a)(1). To use it, the procurement officer must determine, with the approval of the agency head, that there are at least two available sources for the services, but the absence of effective competition makes it "unreasonable to expect bids or proposals from the available sources." SFP, § 13-106(a)(3). The procurement also must be one of a class for which the Department of Budget and Management has approved the use of this method. SFP, § 13-106(a)(2).
When an agency uses this method, it must proceed in two steps. First, the agency gives public notice of its requirement for services and solicits "general expressions of interest" from providers. SFP, § 13-106(b). Then, as the need for services arises, without additional advertising, the procurement officer may conduct discussions with any responsible service provider that has submitted an expression of interest. SFP, § 13-106(c). The statute directs the agency to "treat fairly and equally with respect to discussions all responsible service providers who have submitted expressions of interest." Id. The agency may award a contract if the agency head, on the basis of pending discussions or past program experience, determines that it would serve the State's best interests, and if the agency obtains all other approvals required by law. SFP, § 13-106(d). Notice of awards under this method must be published in the MarylandContract Weekly. SFP, § 13-106(e).
[10] The term "competitive sealed proposals" was substituted for "competitive negotiation" in the general 1986 revision of the procurement law. Chapter 40, Laws of Maryland 1986. The preference for competitive sealed proposals is now contained in SFP, § 13-102(b)(1).
[11] These exemptions are currently contained in SFP, § 11-203(a)(1)(ii) and (ix). Section 11-203(a)(1) also exempts from the procurement law, inter alia, procurement by: "(vii) the Maryland Public Broadcasting Commission, for services of artists for educational and cultural television productions"; and "(viii) public institutions of higher education, for cultural, entertainment, and intercollegiate athletic procurement contracts." Although the types of procurements listed in SFP, § 11-203(a) are generally exempt from the requirements of the procurement law, they remain subject to certain provisions enumerated in SFP, § 11-203(b). The statute also requires the use of "procedures that promote the purposes stated in" the procurement law. SFP, § 11-203(b)(2). In any event, for purposes of your inquiry, these purchases remain "procurement contracts" under the definitions in the procurement and public ethics laws.
[12] At the time, and until 1987, the Juvenile Services Administration was a unit within the Department of Health and Mental Hygiene. Juvenile Justice in Maryland: An Organizationaland Philosophical History, available at the Department of Juvenile Justice website www.djj.state.md.us/moreinfo.html
(February 22, 2000).
[13] The regulations were originally adopted following the 1984 legislation by the Department of Budget and Fiscal Planning, as it was then known, to which the Board had delegated authority over many procurements of services. See 12:15 Md. R. 1526-27 (July 19, 1985).
[14] Current regulations identify the Department of Health and Mental Hygiene, the Department of Human Resources, the Department of Juvenile Justice, the Office for Individuals with Disabilities, and the Department of Aging (identified in the regulations by its former name, the Office on Aging). COMAR21.14.01.05A.
[15] Although COMAR 21.14.01.07 does not itself reflect the 1999 increase from $100,000 to $200,000 in the threshold for delegation of approval authority by the Board to the Department of Budget and Management, that regulation does refer to COMAR21.02.01.04A, which was amended to raise the threshold as of December 27, 1999. 26:26 Md. R. 1959-60 (December 17, 1999).
[16] Indeed, we understand that the Department's acquisition of residential services for juveniles is conducted under State procurement law and regulations.
 *Page 80