797 A.2d 816

**CALVERT JOINT VENTURE # 140**

v.

**Ross R. SNIDER, et ux.**

**No. 885, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

May 3, 2002.

Carlton M. Green (Green, Leitch & Steelman on the brief) College Park, for appellant.

John Marshall (Moldawer & Marshall, P.C. on the brief) Rockville, for appellees.

Argued before DAVIS, BARBERA, and RAYMOND G. THIEME, JR. (retired, specially assigned), JJ.

DAVIS, J.

The present controversy between appellant Calvert Joint Venture # 140 and appellees Ross R. and Nancy J. Snider emanates from a land installment contract dated November 23, 1987, containing a provision in which appellees reserved an interest in all "oil, gas or other mineral rights in and to" the subject property located in Calvert County, Maryland. The contract also included a provision requiring that appellees sign applications for the subdivision of the land during the life of the contract.

On March 24, 2000, appellant filed a Complaint for Declaratory Relief and Other Appropriate Relief against appellees in the Circuit Court for Montgomery County. Count I of the complaint requested declaratory relief regarding the "effect of and extent of the reservation of oil, gas and mineral rights by [appellees] in relation to [appellant's] intended use of the property purchased for a residential subdivision." Count II sought reformation of the November 22, 1987 land installment contract "to enable [appellant] to utilize the property for residential subdivision purposes without hindrance or interference from [appellees]." Count III sought specific performance of the terms of the contract with regard to the approval of the subdivision plats submitted by appellant. Appellees filed their answer on May 5, 2000.

On April 24, 2001, the trial court (McGuckian, J.) declared that the parties hold two distinct estates in the same land, the mineral rights reservation extended to appellees' heirs, the owner of the surface is entitled to subadjacent support of the surface, and, in removing the minerals, the owner is bound to

do so without injury to the surface or the buildings on the surface. Furthermore, the court concluded that the sole issue before it was the issue of ownership rights under the mineral reservation, declining to order specific performance or reform the contract. Appellant filed a Motion to Alter or Amend Judgment on May 2, 2001, asking the court to specifically declare that appellees may not disturb the surface of the land where appellant had subdivided lots and to require appellees to sign the requested plats. The court denied appellant's motion on June 11, 2001. Appellant filed this timely appeal on June 27, 2001, in which it presented four questions, which we combine and rephrase for clarity as follows:

I.  Did the trial court err in failing to address all issues presented in Counts I, II, and III?

II. Did the trial court err in holding the reservation of mineral rights extended to appellees' heirs?

We answer the above questions in the negative and affirm the judgment of the trial court.

## FACTUAL BACKGROUND[1]

Appellant purchased approximately 145 acres from appellees in 1982. The parties entered into a land installment contract on November 22, 1987 with the intention of acquiring and subdividing the property into residential lots for resale. The contract provided in relevant part:

The Buyer will comply with all local and other laws and regulations governing occupancy and use of the said premises.

During the life of this contract, the [appellees] agree on the 106.248 parcel only to sign applications required to plat and record the property as a subdivision in accord with and record same, provided that all expenses incurred therewith will be paid in whole by the [appellant]. [Appellant] may begin the subdivision process at any time during the life of the land sales contract.

---

1.  The parties jointly stipulated to the facts of the case.

The [appellees] reserve all oil, gas and other mineral rights. [Appellees] also reserve in connection with the oil, gas or other mineral reservations the right to execute leases or other documents relating to production of oil, gas and other minerals upon such terms as are acceptable to [appellees](the Grantors).

Approximately three years after the execution of the land installment contract, appellant began converting the property from a tree farm to a residential subdivision. In 1990, appellees agreed to sign the papers required to commence the subdivision process on the 106.248–acre parcel, pursuant to the above provisions. In addition, they signed the initial subdivision application, which commenced the process of subdividing the property for use as residential lots on the entire 154.2 acres.

Appellant filed a complaint for declaratory judgment against appellees in the Circuit Court for Calvert County in August 1995, alleging that appellees were unable to convey marketable title for tract 3. Appellant sought a declaration of the sale price for the remaining tracts, reformation of the contract, and specific performance. The issue concerning the mineral rights was not litigated. After a two-day trial, the court set the sale price for tracts 1 and 2 at $345,642 and ordered that those terms not modified by the order, including the reservation of mining rights, remain in full force and effect. Pursuant to the order, appellees subsequently executed a special warranty deed on October 17, 1996, which was recorded by appellant on May 30, 1997. The deed stated in relevant part:

SUBJECT TO Grantor's reservation of all oil[,] gas[,] or other mineral rights in and to the aforesaid property[,] Grantor also reserves in connection with the oil, gas or other mineral reservations, the right to execute leases or other documents relating to the production of oil, gas and other minerals upon such terms and conditions as are acceptable to Grantor.

In December 1999, appellant submitted a final subdivision plat, but appellees declined to sign it. The plat included the following language:

We, [appellees], owners of all oil, gas or other mineral rights in and to the aforesaid property, ... by virtue of the reservation ... contained in the [special warranty] Deed dated October 17, 1996, and recorded May 30, 1997 .... join in this plat for the purposes stated above, and to *confirm said ownership in themselves for their lifetime and no longer* and to confirm their right to prospect, mine and operate in and under the land for oil, gas or other minerals, by any and all subterranean mining methods that are permissible under current County and State regulations and will not interfere with the use of the surface of the land as a residential subdivision. *[Appellees] acknowledge that said rights are subordinate to the use of the property as a residential subdivision and that they reserved no right of ingress to and on and egress from the surface of the land for the purpose of prospecting mining, drilling wells, and operating beneath the surface and extracting and removing oil, gas or other minerals from below the surface of the land....*

(Emphasis added.) As a result of appellees' refusal to sign the application, appellant filed the instant case in the circuit court.

## LEGAL ANALYSIS

### I

In its Opinion and Order, entered April 24, 2001, the trial court found that the contract at issue clearly and unambiguously reserved an ownership interest in the mineral rights to appellees. Relying on the "written documents presented for the [c]ourt's review, [which were devoid] of any language indicating that the reservation survives only through the life of either [appellee]," the trial court also found that the reservation extended to appellees' heirs. In construing the rights associated with appellees' reservation, the trial judge determined that, because appellees and appellant own two distinct interests in the land, "the owner of the surface and the owner of the minerals must each necessarily exercise the rights

which go with his separate title with due regard for the rights of the other." The court did not address the issues "relating to the procedure, method, or timing of extraction of the disputed substances upon the surface estate," concluding that those issues were not before it.

Appellant's contentions are tri-fold. First, appellant alleges that the trial court failed to provide complete declaratory relief because it did not declare that appellees had no right to use the surface of the land at issue. Furthermore, continues appellant, the court failed to address appellant's claim for reformation of the contract. Finally, appellant asserts that the trial court erred in its failure to order specific performance by appellees. Appellees counter that appellant's arguments fail to appreciate the substance of the trial court's finding. Indeed, they argue, the lower court's findings that the parties owned independent estates in the same land, with mutual obligations of cooperation, effectively served as a final and appropriate ruling on *all issues* raised by appellant.

## A

In construing a deed, the lower court is to give effect to the intent of the contracting parties. If the terms of the deed are clear and unambiguous, that intent must be gleaned from its four corners. *See Gilchrist v. Chester,* 307 Md. 422, 425, 514 A.2d 483 (1986). Only in instances when the terms are ambiguous may the court look to extrinsic evidence. *Id.*

Although a basic principle of real property law, there exists little case law regarding the relative rights of the parties when a reservation of minerals has been included in a deed. The Arizona case of *Spurlock v. Santa Fe Pacific R.R. Co.,* 143 Ariz. 469, 694 P.2d 299 (Ct.App.1984), however, speaks directly to the issue. In *Spurlock,* the appellee filed a cause of action against the appellant, alleging conversion of helium removed from deposits underlying a parcel of land owned by the appellee. The appellant, the previous owner of all of the lands at issue, contended that it maintained its ownership interest in the underlying helium and other substances pursuant to a

mineral reservation in the original conveyances to the appellee's predecessors in title. After a protracted trial, judgments were entered in favor of the appellee, quieting title in its favor as to all of the substances in issue.

In overruling the trial court, the Court of Appeals of Arizona reviewed the general approach to reservations of minerals:

> [A] reservation of "all minerals whatsoever" reflects a *general* intent of the parties to sever the surface estate from the underlying mineral estate. It indicates that the parties intended to create two distinct, coexisting, and individually valuable estates. Thus, the grantor retains ownership of all commercially valuable substances separate from the soil, while the grantee assumes ownership of a surface that has value in its use and enjoyment.

*Id.* at 308 (citing *Watt v. Western Nuclear, Inc.*, 462 U.S. 36, 50–55, 103 S.Ct. 2218, 76 L.Ed.2d 400 (1983); *Maynard v. McHenry*, 271 Ky. 642, 113 S.W.2d 13 (1938)).

The Arizona court noted, however, that the ownership of the minerals was not the only issue before it:

> ... We recognize that in order for both the surface and mineral estates to co-exist and retain their individual value, some accommodation between the respective owners is necessary.
>
> In general, the owner of the mineral estate possesses the incidental right of entering, occupying, and utilizing the surface to explore for and develop the underlying minerals.

*Id.* at 309 (citing 58 C.J.S. *Mines and Minerals* § 159 (1948)).

The court further noted:

> The enumeration of ... minerals indicates a specific intent on the part of the contracting parties that these substances would be fully developed. In essence, the surface owner knew of and agreed to this burden on his estate. It is logical to assume that parties intending to sever the mineral from the surface estate would contemplate some

surface destruction in the development of [the] sub-
stances....

*Id.*

■ Applying the above-stated rationale to the case at
hand, we arrive at essentially the same conclusion as that
reached by the trial court. Although we need not decide
which substances are to be included within the phrase "all
minerals whatsoever," as was the *Spurlock* court's task, the
Arizona court's holdings with regard to the effects of a mineral
reservation are applicable. The trial court correctly concluded
that the parties own two distinct interests in the land—
appellees own an interest in the "oil, gas, or other minerals"
and appellant owns an interest in the surface land. The
provisions of the contract between the parties were, indeed,
clear and unambiguous; therefore, the plain language con-
trols.

■ Notably, appellant sought declaratory judgment as a
consequence of appellees' refusal to execute the final subdivi-
sion plat in 1999, which provided, in part:

> We, [appellees], owners of all oil, gas or other mineral
> rights in and to the aforesaid property, ... by virtue of the
> reservation ... contained in the [special warranty] Deed
> dated October 17, 1996, and recorded May 30, 1997 ....
> join in this plat for the purposes stated above, and to
> *confirm said ownership in themselves for their lifetime and
> no longer* and ... will not interfere with the use of the
> surface of the land as a residential subdivision. *[Appellees]
> acknowledge that said rights are subordinate to the use of
> the property as a residential subdivision and that they
> reserved no right of ingress to and on and egress from the
> surface of the land for the purpose of prospecting mining,
> drilling wells, and operating beneath the surface and ex-
> tracting and removing oil, gas or other minerals from
> below the surface of the land.* ...

(Emphasis added.)

The language contained in the above final subdivision plat
clearly conflicts with the unambiguous terms of the October

17, 1996 special warranty deed, which unequivocally reserve unto the Grantor "the right to execute leases or other documents relating to the production of oil, gas and other minerals *upon such terms and conditions as are acceptable to Grantor.*" Appellees executed the special warranty deed which contained language that mirrored the land installment contract executed by the parties. Neither the special warranty deed nor the land installment contract provides for appellees to relinquish their right of ingress or egress or to confirm that the interest in the property is limited to a life estate in the appellees. In other words, appellant resorted to the declaratory judgment proceeding to effectuate a modification of the terms to which the parties had agreed when it was unsuccessful in persuading appellees to sign the application for a final subdivision plat.

In addition, appellees possess the right to "use the surface in reaching and removing the minerals," as noted in the trial court's opinion (citing 54 Am.Jur.2d, Mines and Minerals, § 148). To decide otherwise would be to invalidate appellees' right to the materials. To that end, appellant's position that the trial court should have proclaimed that "appellees may not use the surface in any exercise of their mineral right reservation" is entirely without merit. The trial court correctly declined to make such a declaration.[2]

**B**

◼ Similarly, appellant's second contention that the trial court did not address the issue of reformation of the contract is without merit.

[A]lthough courts exercising equity powers may reform an instrument to conform it to the intention of the parties, a written document will be reformed when and only when

---

**2.** Contained within its attack on the declaratory relief granted is appellant's contention that the trial court should have addressed all applicable zoning regulations and other statutes relevant to mining. This issue was simply not before the court. Appellant never requested such relief in its complaint.

there is a mutual mistake of fact, or a mistake is made by one of the parties accompanied by fraud, duress or other inequitable conduct practiced on the person making the mistake by another party.

*Maryland Port Admin. v. John W. Brawner Contracting Co.,* 303 Md. 44, 58–59, 492 A.2d 281 (1985) (citations omitted).

■ Appellant asserts that, because there was no express reservation of ingress and egress "and the unlimited development of mineral rights would necessarily involve a disturbance of the surface of the proposed residential building lots," the trial court should have reformed the contract to prohibit appellees from utilizing the surface. As explained above, however, the contract and the deed clearly and unambiguously provided appellees with an interest in the subterranean materials. As such, they retain the right of ingress and egress in furtherance of their right to the minerals. Neither party alleges mistake by fraud, duress, or other inequitable conduct; therefore, the trial court was without authority to reform a valid, clear, and unambiguous instruments in the manner proposed by appellant.

## C

In its complaint, appellant sought specific performance of the terms and conditions of the subject land installment contract requiring appellees to sign applications to plat and record the property as a subdivision. Such relief, appellant contends, would reflect the "parties' intent as to the ultimate subdivision of the subject property into residential lots." The trial court's order did, indeed, reflect the parties' intentions, as stated above. The unambiguous language of the contract provided appellees with a reservation interest in the land's subterranean oil, gas, and minerals. As noted by appellees in their brief, the subdivision plats submitted to them in December of 1999 contained the following relevant language:

[Appellees] acknowledge that [their right to prospect, mine and operate in and under the land for oil, gas or other minerals, by any and all subterranean mining methods] are

subordinate to the use of the property as a residential subdivision and that they reserved no right of ingress to and on and egress from the surface of the land for the purpose of prospecting mining, drilling wells, and operating beneath the surface and extracting and removing oil, gas or other minerals from below the surface of the land. . . .

In submitting this plat, appellant was asking appellees to forfeit an interest that they rightfully owned under the original contract. The court did not have the authority to order such relief. Appellees confirmed their original intentions in refusing to sign the December 1999 subdivision plats. Moreover, the trial court's finding that appellees maintained a right to ingress and egress effectively addressed Count III of appellant's complaint.

## II

█ Finally, appellant assigns as "clear error" the lower court's finding that the reservation of mineral rights extends to appellees' heirs. In asserting this contention, appellant relies on the following language, contained in Md.Code (1996 Repl.Vol.), Real Prop. (R.P.) § 4–105:

No words of inheritance are necessary to create an estate in fee simple or an easement by grant or reservation. Unless a contrary intention appears by express terms or is necessarily implied, every grant of land passes a fee simple estate, and every grant or reservation of an easement passes or reserves an easement in perpetuity.

Because the Special Warranty Deed executed by appellees contained express language that the right to execute leases for the production of oil, gas, and other minerals is limited to appellees exclusively, appellant argues, the reservation in the land installment contract is limited, "by necessary implication," to a term of the lives of appellees only. Appellees counter that "there was no language in the reservation clause of the Special Warranty Deed to suggest a life estate or other limited estate"; therefore, the trial court properly concluded that appellees' reservation was an interest in fee simple.

*Case v. Marshall*, 159 Md. 588, 152 A. 261 (1930), cited by appellees, stands for the proposition that words of limitation or inheritance are not essential to create an estate in fee simple:

> [W]here a contrary intention is not clearly shown, both deeds and assignments, as well as wills, though without words of limitation or perpetuity, are presumed to carry such estate as the grantor, assignor, or testator has the power to convey, assign, or dispose of by will, and not an estate limited to the life of the grantee, assignee, devisee, or legatee, or an estate or interest less than that over which such party has the power of disposition.

*Id.* at 594, 152 A. 261. This principle was later codified at R.P. § 4–105, *supra.* When read together, it is clear that Maryland law favors the estate in fee simple, as opposed to a limited estate. Relying on the plain language of the contract, the court concluded that there were no words that would support the finding of an intention contrary to the existence of an estate in fee simple. Moreover, the court took into account the testimony presented at trial, which bolstered the finding that it was the intent of the parties to bequeath appellees' interest to their children and grandchildren. In light of the evidence presented, the trial court's findings did not constitute clear error.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**